No. 21-2258

---

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

JOHN J. MIRANDA,

*Claimant-Appellant*,

v.

DENIS MCDONOUGH,
Secretary of Veterans Affairs,

*Respondent-Appellee.*

---

On Appeal From The United States Court Of Appeals For Veterans Claims
Case No. 19-5973

---

**OPENING BRIEF OF APPELLANT JOHN J. MIRANDA**

Jeffrey Liu
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8285
jyliu@gibsondunn.com

Andrew T. Brown
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7219
atbrown@gibsondunn.com

*Counsel for Appellant*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, the undersigned Counsel certifies:

1.      The name of every party or amicus represented by me:  John J. Miranda.

2.      The name of the Real Party in interest represented by me is:  none.

3.      The parent corporations and publicly held companies that own 10% or more of stock in the party: none.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:  none.

5.      The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision:  *John J. Miranda v. Denis McDonough*, Secretary of Veterans Affairs, No. 19-5973 (United States Court of Appeals for Veterans Claims).

6.      There are no organizational victims or bankruptcy case debtors or trustees in this appeal.

Dated: March 25, 2022                     Respectfully submitted,

                                           */s/ Andrew T. Brown*
                                          Andrew T. Brown
                                          *Counsel for Appellant*

i

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT ................................................. 1

STATEMENT OF JURISDICTION ......................................................................... 2

INTRODUCTION .................................................................................................. 3

STATEMENT OF THE ISSUES ........................................................................... 4

STATEMENT OF THE CASE ............................................................................... 5

    I.     Legal Background ..................................................................... 5

    II.    Factual and Procedural Background ......................................... 8

SUMMARY OF ARGUMENT ............................................................................. 15

ARGUMENT ..................................................................................................... 188

    I.     The Veterans Court Impermissibly Substituted Its Own
         Findings and Reasoning for the Board's. ............................... 18

    II.    The Veterans Court Misinterpreted § 1154(b)'s Mandate
         that the Presumption of Service Connection Applies Even
         in the Absence of Contemporaneous Records. ...................... 30

CONCLUSION ................................................................................................... 35

ADDENDUM  (Personally Identifiable Information Redacted) ......................... A1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Gardner*,
513 U.S. 115 (1994)...............................................................................18

*Byron v. Shinseki*,
670 F.3d 1202 (Fed. Cir. 2012) ...........................................................25

*Collette v. Brown*,
82 F.3d 389 (Fed. Cir. 1996) ..........................................6, 7, 18, 31

*Dambach v. Gober*,
223 F.3d 1376 (Fed. Cir. 2000) ......................................17, 31, 32, 35

*Elkins v. Gober*,
229 F.3d 1369 (Fed. Cir. 2000) ...........................................................26

*Fleshman v. West*,
138 F.3d 1429 (Fed. Cir. 1998) ......................................................25, 27

*Hensley v. West*,
212 F.3d 1255 (Fed. Cir. 2000) ...........................................................26

*Mayfield v. Nicholson*,
444 F.3d 1328 (Fed. Cir. 2006) ......................................................28, 29

*McDonald v. Shinseki*,
2012 WL 1661246 (Vet. App. May 14, 2012) .................................30

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
182 F.3d 17 (D.C. Cir. 1999)...............................................................21

*Reeves v. Shinseki*,
682 F.3d 988 (Fed. Cir. 2012) ...........................................................5

*Richardson v. Nicholson*,
476 F.3d 883 (Fed. Cir. 2007) ...........................................................18

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943)...............................................................................16

iii

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)...............................................................................21

*Spiva v. Astrue*,
    628 F.3d 346 (7th Cir. 2010) ...............................................................28

*Tadlock v. McDonough*,
    5 F.4th 1327 (Fed. Cir. 2021) ........................................ 4, 17, 20, 21, 25, 26, 27

*(Title Redacted by Agency)*, Bd. Vet. App. 1311559 (Apr. 8, 2013) .....................33

**Statutes**

38 U.S.C. § 1117.....................................................................................25

38 U.S.C. § 1154(b) ........................................................................*passim*

**Legislative History**

H.R. Rep. No. 77-1157 (1941)........................................................5, 31, 34

S. Rep. No. 77–902 (1941) .................................................................31, 34

**Other Authorities**

Richard Burr & Kay Hagan, *A Congressional Look at Postdeployment
    Behavioral Health Care*, NCMJ Vol. 72, No. 1 (2011),
    https://www.ncmedicaljournal.com/content/72/1/37 ........................................34

Emily Keram, *PTSD in Afghanistan and Iraq War Veterans*, 57
    SONOMA MED. (Summer 2006), https://issuu.com/ssvmedi-
    cine/docs/0701-ssvmed.........................................................................33

*Traumatic Brain Injuries: Unreported and Untreated in an Army Pop-
    ulation*, Military Medicine, 185, S1:155 (2020) .................................................34

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Appellant John J. Miranda states that (1) no appeal in or from this same proceeding was previously before this Court or any other court and (2) counsel is unaware of any case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Pro bono counsel state that oral argument is appropriate in this case because of the importance and complexity of the questions of law presented, including the questions of statutory interpretation, which have the potential to impact many other veterans and their families.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal because it involves "questions of law, including interpreting . . . statutory provisions" that were "relied upon in the decision of" the United States Court of Appeals for Veterans Claims.  38 U.S.C. § 7292(d)(1); *see also id.* § 7292(c) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof.").  This appeal was timely filed, on August 18, 2021, from a final judgment of the Veterans Court entered on June 22, 2021, within the period provided by 38 U.S.C. § 7292(a).

## INTRODUCTION

Over eight decades ago, Congress enacted an important statutory provision for the determination of veterans' benefits designed to give special consideration to combat veterans injured while serving our country. *See* 38 U.S.C. § 1154(b). Recognizing that the absence of contemporaneous medical records often makes service-connected injury difficult to prove, Congress passed a law entitling combat veterans to a presumption of service-connected injury based on their own satisfactory lay testimony, notwithstanding the absence of official records. That presumption is rebuttable only on clear and convincing evidence that the veteran did not suffer a service-connected injury, and this Court has repeatedly admonished that the VA *must* apply this framework.

The Board of Veterans' Appeals ("Board") failed to apply this presumption in three consecutive appeals in this case. Appellant John J. Miranda is a combat veteran who served honorably in the Marine Corps and deployed twice to the Persian Gulf. For over a decade now, Mr. Miranda has sought disability benefits for the lingering effects of a Traumatic Brain Injury ("TBI") he incurred while in service. Over the course of his efforts, the Court of Appeals for Veterans Claims ("Veterans Court") has held three times that the Board failed to provide Mr. Miranda the statutory guarantee that Congress enshrined in § 1154(b).

3

After twice reversing the Board for that error, the Veterans Court in the decision on appeal here once again determined that the Board had erred, but determined that the Board's latest failure was not prejudicial. In so holding, the Veterans Court added to "a recent string of aggressive prejudicial error analyses by the Veterans Court." *Tadlock v. McDonough*, 5 F.4th 1327, 1332 (Fed. Cir. 2021) (cleaned up). The Veterans Court impermissibly substituted its own reasoning for the Board's in violation of the bedrock administrative law principle that an agency may be affirmed only on the grounds set forth by the agency. Worse still, the Veterans Court misinterpreted § 1154(b) by effectively upholding the Board's decision on the basis of a *lack* of official records—precisely what § 1154(b) forbids.

These errors warrant reversal. After over a decade of administrative proceedings, Mr. Miranda has never received a fair analysis of his claim for disability benefits under the statutory framework promised by Congress to combat veterans. This Court should reverse, or alternatively, vacate and remand with instructions to reassign the case to a new Board member to conduct a fair and proper analysis.

## STATEMENT OF THE ISSUES

I.   Whether the Veterans Court impermissibly substituted its judgment for that of the Board in holding, based on the application of a legal framework the Board did not apply and factual findings the Board did not make, that clear and convincing

evidence rebutted the statutory presumption of service-connected injury under 38 U.S.C. § 1154(b).

II.    Whether the Veterans Court misinterpreted 38 U.S.C. § 1154(b)'s mandate that the lack of contemporaneous "official records" may not be used to refute a veteran's lay evidence of service-connected injury by holding that the mere failure to indicate a claimed injury on a routine post-deployment questionnaire suffices to rebut the statutory presumption of service-connected injury.

## STATEMENT OF THE CASE

### I.    Legal Background

This case concerns the application of 38 U.S.C. § 1154(b), an important statutory provision that Congress enacted for the benefit of combat veterans seeking to secure disability benefits based on injuries they incurred during their military service.  For years, combat veterans had "faced 'major obstacle[s]' when seeking to assemble the medical records necessary to establish that they suffered an injury or disease while in service." *Reeves v. Shinseki*, 682 F.3d 988, 998 (Fed. Cir. 2012) (alteration in original) (quoting H.R. Rep. No. 77-1157, at 3 (1941)).  Medical records often do not survive, and "soldiers may not immediately seek medical treatment for combat-related injuries." *Id.*  In response, Congress passed the provision now codified at 38 U.S.C. § 1154(b) to "considerably lighten the

[evidentiary] burden" that combat veterans must meet to demonstrate that their injuries are service-connected. *Collette v. Brown*, 82 F.3d 389, 392 (Fed. Cir. 1996).

Section 1154(b) allows combat veterans to use "satisfactory lay or other evidence" to establish that they were injured on active duty, even in cases where "there is no official record" of such injury.[1] 38 U.S.C. § 1154(b). When determining whether a combat veteran incurred an injury in service, the statute demands that the Department of Veterans Affairs ("VA") "resolve every reasonable doubt in favor of the veteran." *Id.* In this way, Congress made it "abundantly clear that special considerations attend the cases of combat veterans." *Collette*, 82 F.3d at 392 (cleaned up).

---

[1] In full, 38 U.S.C. § 1154(b) states:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, air, or space organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

To effectuate § 1154(b)'s guarantee, this Court has clarified that the VA "must" conduct "a three-step, sequential analysis" when a combat veteran seeks benefits under § 1154(b). *Collette*, 82 F.3d at 392–93. First, the VA must determine "whether the veteran has proffered 'satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease.'" *Id.* Second, the VA must determine whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service." *Id.* The statute provides that the VA "shall accept" the veteran's evidence as "sufficient proof of service-connection" when these threshold inquiries are met, even if "no official record" of a service-connected injury exists. 38 U.S.C. § 1154(b). "Thus, if a veteran satisfies both of these inquiries mandated by the statute, a factual presumption arises that the alleged injury or disease is service-connected." *Collette*, 82 F.3d at 393. If—and only if—the VA finds that the presumption exists, the VA may then proceed to the third step, which involves determining whether the presumption is rebutted by "clear and convincing evidence" that the injury was not service-connected. *Id.*

Despite § 1154(b)'s clear terms and this Court's repeated admonitions that the VA "must" apply that framework, *Collette*, 82 F.3d at 393, as described below the Board repeatedly failed to do so in this case.

## II.    Factual and Procedural Background

Appellant John J. Miranda[2] is a combat veteran who served honorably in the United States Marine Corps during both Operation Desert Storm and Operation Iraqi Freedom, achieving the rank of Sergeant.  Appx580 (DD-214).

Across two deployments, Mr. Miranda suffered a series of head injuries that serve as the basis for his claim for disability benefits.  After briefly leaving the Marine Corps after his service in Desert Storm, Mr. Miranda decided to re-enlist in 2004 during the height of U.S. combat operations in Iraq.  In between his stints on active duty, Mr. Miranda worked as a driver for United Parcel Service, and he suffered a minor head injury in the course of that work in 2001.  Appx1983.  But by the time of his re-enlistment three years later, Mr. Miranda was medically cleared for duty, and was not experiencing any serious symptoms of that injury.  Appx2001.  The examiner noted in Mr. Miranda's pre-service medical examination that, although he had some lingering health issues, he was generally a "[h]ealthy [a]dult with no current limitations," Appx460, and he was allowed to re-enlist.

In 2006, Mr. Miranda was deployed to Iraq with Bravo Battery, 1st Battalion, 14th Marines, where he served as an ammunition technician and conducted military police duty as part of a task force operating out of the Al Anbar Province of Iraq.

---

[2]    Appellant legally changed his name from Juan Miranda to John Miranda in 2010; as a result, some of the records in this case refer to him as Juan Miranda.

Appx526; Appx580. In this role, Mr. Miranda conducted numerous patrols in which his unit came under attack. Appx578 (describing that his unit "[fell] under attack numerous times" after leaving their base). Mr. Miranda also survived "mortar blast[s]" that "threw [him] off his [bed]" while on base, Appx1974, drove over mortar blast holes in his vehicle, Appx1982, and frequently hit his head while exiting vehicles while he was on patrol, Appx1450. *See also* Appx2856 (reporting "many [m]ortar attacks"). Official Marine Corps records corroborate Mr. Miranda's general account, showing that Bravo Battery engaged in significant combat operations during its deployment to Iraq—including conducting mounted and dismounted patrols and base security operations. Appx550–551 (Summary of Battery B Command, Operations, and Training).

Mr. Miranda also suffered injuries during hand-to-hand combat training that his unit conducted in Iraq. In August 2006, Mr. Miranda was thrown to the ground and his "head landed on concrete." Appx1449–1450; Appx2001. Mr. Miranda feared that he would be "sent home" early due to injury after this incident, so he denied having hurt his head when asked. Appx1449–1450; Appx2001. Two months later, when Mr. Miranda's unit returned home together from their deployment, Mr. Miranda once again did not disclose his head injuries on a post-deployment health questionnaire. Appx3102. Mr. Miranda filled that form out hastily, as it was the

9

last remaining administrative obstacle standing between him and his family—including his three young children—whom he had not seen in over a year. Appx46.

After his deployment, Mr. Miranda began experiencing severe symptoms of a head injury, unlike anything he had experienced prior to his deployment, including "electroshock" symptoms. *Compare* Appx460, *with* Appx564. Following his honorable discharge from the Marine Corps in 2007, Appx580, Mr. Miranda was diagnosed with a Traumatic Brain Injury ("TBI"), Appx2675–2685.

Mr. Miranda's journey to this Court began in 2009, when a VA regional office denied Mr. Miranda service connection for the effects or aggravation of a TBI. Although multiple clinicians attributed Mr. Miranda's TBI symptoms to in-service head trauma, *e.g.*, Appx2856–2858 (diagnosing post-concussion syndrome due to in-service head injury); Appx2789 (reporting "TBI sustained in service"); Appx2176 (diagnosing "brain concussion" and "balance disorder" due to in-service head injury), the VA determined after an examination in 2009 that Mr. Miranda's TBI was not service-connected, because Mr. Miranda purportedly "complained of similar symptoms" prior to his deployment, and there was a lack of supporting medical documentation, Appx2573–2578. The VA therefore denied Mr. Miranda medical benefits for his TBI. *Id*.

Mr. Miranda appealed this decision to the Board. Appx2462. On April 15, 2015, the Board issued its decision concluding that Mr. Miranda's residual TBI

10

symptoms of "[d]izziness and loss of balance were neither incurred in nor related to service," attributing them instead to his pre-service head injury. Appx1942–1956. The Board based its decision largely on a finding that Mr. Miranda's statements concerning his in-service head injuries were "inconsistent," and thus "not . . . credible." *Id.*

On May 12, 2015, Mr. Miranda appealed the Board's April 15, 2015 decision to the Veterans Court. Appx3250. Counsel for the VA recognized that the Board had erred in failing to apply the key statutory provision at issue here, 38 U.S.C. § 1154(b), and the parties thus agreed to file a joint motion for partial remand ("JMR"), in which the parties requested that the Veterans Court vacate and remand the Board's decision in its entirety on Mr. Miranda's TBI claim. Appx3291. The Veterans Court granted the JMR on August 17, 2016. Appx3297.

On remand, Mr. Miranda provided the Board with new evidence, including a "buddy statement" from a fellow Marine who had served in Mr. Miranda's unit, corroborating Mr. Miranda's head injuries in Iraq, including the hand-to-hand combat training injury. Appx1449–1450. But the Board's second decision reached the same conclusion as the first decision, denying service connection for Mr. Miranda's TBI. Appx231–236. The second Board decision was as flawed as the first. It did not discuss any of the new evidence that Mr. Miranda put forward, and simply "reincorporate[d]" the factual findings of its vacated decision from 2015.

11

Appx235. In one short paragraph, the Board reasoned that Mr. Miranda lacked credibility because his statements concerning the "onset of his claimed TBI symptoms," while not "contradict[ory]," were nevertheless "not consistent," and because Mr. Miranda supposedly "denied ever having experienced a head injury at the time of his separation" from the military, an apparent reference to the post-deployment questionnaire. Appx236. The Board did not identify any of the supposed inconsistencies. And despite acknowledging the applicability of § 1154(b), the Board concluded, without explanation, that some unspecified "clear and convincing evidence" demonstrated that Mr. Miranda had not suffered an in-service injury. *Id.*

Mr. Miranda then appealed to the Veterans Court a second time. Appx3298. Recognizing the obvious errors in the Board's 2017 decision, the parties once again agreed to a joint motion for remand, noting that the Board erred by "incorporat[ing] the summary of facts from the April 2015 Board decision into the September 14, 2017" decision, failing to adequately discuss the new evidence, and *again* failing to apply § 1154(b). Appx3342–3347. The Veterans Court agreed, and granted the JMR in March 2019. Appx3348.

On remand—in front of the same Board member for the *third* time—Mr. Miranda submitted still more evidence, in the form of a statement explaining that at the time he completed the post-deployment health assessment in 2006, he did not

report his head injuries suffered in Iraq because he did not yet realize that they would cause his TBI symptoms. Appx46. On August 14, 2019, the Board issued its third decision, once again denying Mr. Miranda service connection for his TBI symptoms. Appx30–41. This decision was copied nearly verbatim from the Board's first two decisions. *Compare* Appx40–41, *with* Appx235–236; *compare* Appx32–40, *with* Appx1947–1954. The Board again reasoned in one short paragraph—copied almost exactly from its prior vacated decision—that Mr. Miranda lacked credibility because his statements concerning the "onset of his [TBI] symptoms," while "not contradict[ory]," were nevertheless "not consistent"; and because he supposedly "denied ever having experienced a head injury at the time of his separation" from the military. Appx40–41. Despite a direct instruction to engage in a proper § 1154(b) analysis, the Board did not supplement its 2017 analysis, merely concluding, again without explanation, that some unspecified "clear and convincing evidence" demonstrated that Mr. Miranda had not suffered an in-service head injury. Appx41.

On appeal, the Veterans Court again recognized that the Board committed numerous errors in its latest decision, including yet another failure "to conduct the three-step analysis required by [§ 1154(b)]," Appx10. But this time, the Veterans Court took matters into its own hands. Instead of reversing or remanding, the Court

conducted a searching prejudicial error review and deemed the Board's mistakes harmless. Appx11–15.

The Veterans Court first held that "the Board failed to conduct a *proper* analysis under section 1154(b)," and that the Board impermissibly "combined the first and third prongs of section 1154(b), determining that Mr. Miranda's lay evidence was sufficient to establish an in-service injury"—the first prong—"and then in the same sentence determining that clear and convincing evidence existed to rebut Mr. Miranda's lay statements"—the third prong. Appx10–11. The Veterans Court noted that the Board also failed to analyze the second prong of the § 1154(b) analysis, stating only "that it was 'not clear' if Mr. Miranda's alleged injury was consistent with the circumstances of his service, but with no further analysis." Appx11. The Veterans Court, however, held that the Board's failures were harmless because "the Board found that the evidence weighs against a finding that Mr. Miranda suffered any head injury in service." Appx12. The Veterans Court considered various medical records that, in its view, did not affirmatively indicate an in-service head injury, before ultimately recognizing that "[t]aken by itself, the lack of an injury in the records would not rebut a presumption of a combat injury under section 1154(b)." Appx13.

According to the Veterans Court, the key piece of evidence that the Board considered that *does* support rebuttal of the presumption of an in-service injury is

14

Mr. Miranda's "October 2006 post-deployment questionnaire, where he denied any injuries from vehicles or explosive blasts." Appx13. The Veterans Court concluded that there was no clear error in the Board's consideration of this supposed inconsistency as "clear and convincing evidence against a combat injury," *id.*, and determined that it allowed the Board to properly disregard the evidence that Mr. Miranda did, in fact, suffer a head injury in Iraq, Appx14. Mr. Miranda filed a motion for reconsideration or panel decision, and the Veterans Court granted the request for a panel decision, but denied the motion for reconsideration and adopted the prior single-judge decision as the decision of the Court. Appx18.

This appeal timely followed.

## SUMMARY OF ARGUMENT

No one disputes that Mr. Miranda served his country honorably in two wars in the Persian Gulf. There is also no dispute that 38 U.S.C. § 1154(b), which Congress enacted to assist combat veterans in establishing service-connected injury for purposes of securing disability benefits, applies to his case. And there is no dispute that the Board—now, for the third time—failed to accord Mr. Miranda the benefit of that framework. The sole overarching issue on appeal is whether the Veterans Court erred in deeming the Board's latest failure to do so non-prejudicial. For two independent reasons, the Veterans Court should be reversed.

15

First, the Veterans Court's prejudicial error analysis impermissibly substituted its own judgment for the Board's. It is a well-settled principle of administrative law that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its actions can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943). But the Veterans Court here affirmed the Board on the basis of a legal framework the Board failed to apply and facts that the Board did not find. On the facts, the Veterans Court conducted its own searching review of the record to determine that evidence in Mr. Miranda's favor—namely, a 2007 determination by an examiner that Mr. Miranda's head injury symptoms were consistent with a TBI suffered in Iraq—was unsupported by other record evidence. *See* Appx14; Appx2868. The Board, by contrast, had discredited that medical evidence because it had been based solely on Mr. Miranda's account of his injuries—which, the Veterans Court explained, "[t]he Board may not" do. Appx14.

On the law, at § 1154(b)'s first two steps, the Veterans Court understood the Board to have "determin[ed]" that Mr. Miranda was entitled to a factual presumption of service-connected injury, but that it had been rebutted by "clear and convincing evidence." Appx10. But the Board recited no facts at the first two steps to show what needed to be rebutted, and the Veterans Court was thus effectively forced to assume the relevant presumption-generating facts on the Board's behalf. At step

three, the Veterans Court again supplemented the Board's threadbare determination that Mr. Miranda was "not credible" with its own review of the record. Appx13. The Veterans Court held that the Board did not clearly err in holding that clear and convincing evidence refuted the presumption of service-connection only "[o]n th[e] basis" of this fresh review—a review the Board itself never conducted in its analysis of § 1154(b). Appx14. As this Court held just last year, "[t]he rule of harmless error cannot be invoked to allow the Court of Appeals for Veterans Claims to decide a matter that is assigned by statute to the [VA] for the initial determination." *Tadlock*, 5 F.4th at 1337 (alteration in original). That is precisely what the Veterans Court did here—filling in the necessary factual predicates and applying the law at each step of the § 1154(b) analysis.

Second, the Veterans Court misconstrued the statutory requirement that the lack of "official records" may not be used against the veteran in determining service connection. The Veterans Court relied heavily on Mr. Miranda's October 2006 post-deployment questionnaire to conclude that the Board did not err in finding clear and convincing evidence of non-injury. But that questionnaire was merely an incomplete record reflecting certain injuries, and not others. Section 1154(b) was enacted precisely to forbid the VA from using such incomplete records, filled out routinely and in haste after a deployment, against a veteran when he later applies for benefits. *See Dambach v. Gober*, 223 F.3d 1376, 1380 (Fed. Cir. 2000).

17

The Veterans Court's numerous errors warrant reversal, and at minimum, the Court should vacate and remand with instructions to re-assign the case to a new Board member to conduct a fair and proper analysis.

## ARGUMENT

There is no dispute that § 1154(b) applies to this case, and that "the Board failed to conduct a proper analysis" under that section. Appx10 (emphasis omitted). But the Veterans Court nonetheless affirmed the Board's erroneous conclusion that Mr. Miranda's head injury was not service-connected, finding that the Board's numerous errors were harmless. In doing so, the Veterans Court impermissibly substituted its own judgment for the Board's and misinterpreted § 1154(b)'s basic prohibition against using the lack of official records against a combat veteran. Each error independently warrants reversal.[3]

## I.     The Veterans Court Impermissibly Substituted Its Own Findings and Reasoning for the Board's.

As the Veterans Court correctly concluded, the Board failed to provide Mr. Miranda the benefit of the required three-step analysis under § 1154(b). As noted, under § 1154(b), the Board "must" conduct "a three-step, sequential analysis" when a combat veteran seeks benefits. *Collette*, 82 F.3d at 392–93. At the first step, the

---

[3] This Court reviews all questions of law de novo. *Richardson v. Nicholson*, 476 F.3d 883, 885 (Fed. Cir. 2007). When interpreting veterans' benefits statutes, however, any doubt is to be resolved in the veteran's favor. *Brown v. Gardner*, 513 U.S. 115, 118 (1994). This case presents only legal issues.

Board considers whether the veteran has proffered "satisfactory lay" evidence of an injury incurred during service. *Id.* at 393. If so, the Board considers at step two whether the proffered evidence is "consistent with the circumstances" of the veteran's service. *Id.* Regardless whether any official record supports the existence of a service-connected injury, a veteran who satisfies those initial inquiries is entitled to "a factual presumption" that his injury is service-connected. *Id.* Only after considering those initial inquiries may the Board turn to consider, at step three, whether "clear and convincing evidence" rebuts that strong presumption created by those factual determinations. *Id.*

Here, the *entirety* of the Board's analysis at steps one and two spanned two sentences:

> While lay evidence of an incident is sufficient to establish an in-service event under § 1154(b), the Board finds clear and convincing evidence that the reports are not credible. Even if his injury could be said to be consistent with the circumstances of the Veteran's combat service, which is not clear, the statements are too contradictory to be afforded credibility.

Appx40. The Veterans Court correctly held that this analysis was not proper. Appx10. According to the Veterans Court, the Board initially determined at step one "that Mr. Miranda's lay evidence was sufficient to establish an in-service injury," but impermissibly "combined" this step with the third step by determining "in

19

the same sentence" that "clear and convincing evidence existed to rebut Mr. Miranda's lay statements." Appx10–11. But that was improper: At step one, the Board was required initially "to determine the credibility of the veteran's evidence standing alone." Appx10.

At step two, the Veterans Court further faulted the Board for stating "that it was 'not clear' if Mr. Miranda's alleged injury was consistent with the circumstances of his service, but with no further analysis." Appx11. The Board essentially abdicated its responsibility to make the required step-two finding. The Veterans Court accordingly held that the "Board's conflation of the first and third prongs and its failure to conduct a meaningful analysis under the second prong does not satisfy the three-part analysis prescribed by section 1154(b)." *Id.*

That error warranted reversal. Rather than reverse and remand for the Board to conduct the required statutory analysis, however, the Veterans Court conducted its own "prejudicial error" review and concluded that the Board's "failure to discuss the three-part analysis under section 1154(b)" was "harmless." Appx11. In so doing, the Veterans Court added its decision to "a recent string of aggressive prejudicial error analyses by the Veterans Court," in which "the Court, under a prejudicial error analysis, applied a provision that the Board did not apply and made factual findings that the Board did not make." *Tadlock v. McDonough*, 5 F.4th 1327, 1332 (Fed. Cir. 2021) (cleaned up).

20

Such post-hoc justifications violate the bedrock administrative law principle that a reviewing court "must judge the propriety" of agency "action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Tadlock*, 5 F.4th at 1332 (applying *Chenery* in a veterans benefits case). The Veterans Court is not permitted to "sustain a 'right-result, wrong-reason' decision of an agency"; it must "send the case back to the agency so that it may fix its reasoning or change its result." *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 23 n.7 (D.C. Cir. 1999). Yet here, the Veterans Court's analysis attributed a number of factual and legal determinations to the Board that it did not expressly make, much less connect to the required § 1154(b) analysis.

Consider a comparison of three premises of the Board's reasoning against the corresponding premises in the Veterans Court's analysis. First, among the evidence in Mr. Miranda's favor was a 2007 finding by a VA examiner that Mr. Miranda's symptoms from a head injury suffered in August of 2006 in Iraq were consistent with TBI. *See* Appx35 (Board decision describing evidence); *see also* Appx2868; Appx2966. On this score, the Board declared this "February 2007" finding to be irrelevant solely because it was "based on the Veteran's account of such an injury occurring," which the Board did not find credible. Appx39.

The Veterans Court began by noting that the Board must have intended to cite

21

a different examination—reflecting treatment notes from October 2007 and February 2008—because no February 2007 finding exists. Appx13–14. In terms squarely contrary to the Board's reasoning, the Veterans Court then underscored that "[t]he Board may *not* disregard a medical opinion just because it is based on a veteran's own account." Appx14 (emphasis added). Rather, according to the Veterans Court, it may do so only "if other facts in the record contradict the veteran's account." *Id.* In the remainder of its analysis on this point, the Veterans Court cited a variety of other sources from the record purportedly contradicting Mr. Miranda's account— none of which were discussed in the Board's analysis of § 1154(b), and one of which was not even *mentioned* in the Board's factual recitation. *Compare* Appx14 (noting that 2007 VA treatment notes suggested that Mr. Miranda's "symptoms were due to anxiety and depression"), *with* Appx35 (mentioning 2007 treatment record's notation of "anxiety and depression," but explaining that physician found Mr. Miranda's "symptoms consistent with TBI"). Only on its own independent review of the record could the Veterans Court deem not clearly erroneous the "Board's determination that the 2007 and 2008 VA treatment notes and examinations were not probative." Appx14. Unlike the Veterans Court, the Board never determined that "other facts in the record," *id.*, contradict the examiner's 2007 finding.

Second and relatedly, in an effort to rehabilitate the Board's fixation on Mr.

Miranda's alleged lack of "credibility," *e.g.*, Appx39—rather than the required determination whether objectively clear and convincing evidence overcomes the presumption of a service-connected injury—the Veterans Court recast the Board's analysis of Mr. Miranda's October 2006 post-deployment questionnaire. In the Board's telling, Mr. Miranda's post-deployment questionnaire served merely to "undermine the credibility" of Mr. Miranda's statements. *Id.* That credibility determination infected the entirety of the Board's analysis, supplying the basis for ignoring all of the medical evidence and testimony in Mr. Miranda's favor. *Id.* ("the Board similarly does not find probative medical opinions" based on Mr. Miranda's statements). The Veterans Court, by contrast, understood the legal significance of the post-deployment questionnaire differently. According to the Veterans Court, the questionnaire *itself* "constituted clear and convincing evidence against a combat injury." Appx13. No such determination appears in the Board's decision.

Finally, and most fundamentally, the Veterans Court's analysis was predicated on determinations that the Board itself never made. The Veterans Court apparently understood the Board's reasoning as grounded on an implicit finding of a presumption of a service-connected injury at steps one and two of the § 1154(b) analysis, followed by a conclusion at step three that the presumption was rebutted by clear and convincing evidence. Appx10–11. But even a cursory review of the Board's decision reveals that framing to be an uncomfortable rationalization of what

23

the Board actually did.  The Board *began* by concluding that "the evidence weighs against a finding that the Veteran incurred a head injury in service," totally divorced from the § 1154(b) framework.  Appx38.  And only after a winding attack on Mr. Miranda's "credibility" did the Board note in a single paragraph that "the applicability of 38 U.S.C. § 1154(b) does not change [that] analysis."  Appx40.

If anything, the Board *inverted* the relevant mode of analysis:  It began with its preordained conclusion that Mr. Miranda had *not* suffered a service-connected head injury, a determination it came to without engaging in any type of presumption analysis, and only then asked whether applying the § 1154(b) framework could alter that conclusion.  But the Board never analyzed what facts fit into the analysis at steps one and two to determine whether Mr. Miranda's statements established a service-connected injury.  The Board's error was thus far deeper than simply "combining" its analysis of the first and third prongs of the § 1154(b) analysis in a single sentence.  Notwithstanding its lip service to § 1154(b), the Board effectively ignored the governing framework altogether.

Because the Board never made the requisite determinations at the first two statutory steps, it was not logically possible for the Veterans Court to have determined whether the Board's factual findings sufficed to rebut the presumption created by those non-existent findings.  The Board did not explain which facts sufficed to produce the rebuttable presumption at steps one and two.  Accordingly, the Veterans

24

Court was forced to make its own determinations regarding the relevant favorable facts for Mr. Miranda, and then conjure new legal and factual determinations to buttress the Board's conclusion that clear and convincing evidence rebutted the presumption of a service-connected injury. That was reversible error. The determination of both the relevant facts that create a presumption of service connection and the relevant contrary findings that purportedly rebut the presumption-generating facts are determinations that the "administrative agency alone is authorized to make." *Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998). "[W]hen the Board misinterprets the law and fails to make the relevant initial factual findings, the proper course for the Court of Appeals for Veterans Claims is to remand the case to the Board for further development and application of the correct law." *Byron v. Shinseki*, 670 F.3d 1202, 1205 (Fed. Cir. 2012) (cleaned up).

In the key respects, this case resembles this Court's recent decision in *Tadlock*. That case involved a veteran who sought presumptive service connection under 38 U.S.C. § 1117 for a pulmonary embolism he suffered after service in the Gulf War. *Tadlock*, 5 F.4th at 1330. The statutory provision there provided presumptive service connection for both "[a]n undiagnosed illness" and a "medically unexplained chronic multisymptom illness" ("MUCMI") incurred due to Persian Gulf service. *Id.* at 1330–31. The Board denied service connection, on the ground that a pulmonary embolism was not an undiagnosed illness. *Id.* at 1331. But the Board failed to

25

consider whether the veteran's condition satisfied the *separate* statutory ground for a MUCMI. *Id.* The Veterans Court held that the Board erred in failing to do so, but deemed the error "not prejudicial" on the ground that the record did not support a finding that the pulmonary embolism was a MUCMI. *Id.* at 1332.

This Court reversed. The Federal Circuit underscored that "[t]he rule of harmless error cannot be invoked to allow the Court of Appeals for Veterans Claims to decide a matter that is assigned by statute to the VA for the initial determination." *Tadlock*, 5 F.4th at 1337 (cleaned up). And that was precisely what the Veterans Court had done: It had impermissibly "sought to consider in the first instance whether [the veteran's] symptoms constituted a MUCMI, an inquiry delegated to the VA." *Id.* at 1339. In violation of foundational administrative law principles, the Veterans Court "applied a provision that the Board did not apply and made factual findings that the Board did not make." *Id.* at 1340 (cleaned up); *see also Hensley v. West*, 212 F.3d 1255, 1264 (Fed. Cir. 2000); *Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000).

The Veterans Court's errors here are similar. As noted above, the Veterans Court corrected the Board's analysis of a non-existent "February 2007" examination. The Board discredited the results of that examination based *solely* on its view that Mr. Miranda was not credible. But the Veterans Court did not rest on that ground.

26

Just as the Veterans Court in *Tadlock* impermissibly reviewed the record to determine whether objective evidence the Board failed to consider satisfied a statutory criterion the Board failed to apply, the Veterans Court here impermissibly reviewed the record to determine whether objective evidence the Board failed to consider sufficed to refute the examiner's 2007 findings under a statutory framework—§ 1154—that the Board failed properly to apply.

In applying § 1154(b), the Veterans Court also made factual findings at each relevant step of the analysis that the Board had neglected to discuss at all; at most, the Board had "mentioned" them in its "recitation of the facts." Appx14. But a mere recitation of facts is insufficient where, as here, the Board was required to conduct a multi-step analysis that identified which factual findings established a presumption of service-connected injury at steps one and two, and whether and how that presumption was rebutted by other "specific" evidence at step three, *Jensen v. Brown*, 19 F.3d 1413, 1417 (Fed. Cir. 1994). *See* 38 U.S.C. § 1154(b). Because these were determinations that the "administrative agency alone is authorized to make," *Fleshman*, 138 F.3d at 1433, the Veterans Court violated the foundational rule against post hoc rationalizations of agency decisionmaking by making those determinations for the Board under the guise of a harmless error analysis.

To be sure, the prejudicial error standard permits the Veterans Court to consider the record as a whole to determine whether "the Board on remand could not

have reached any other determination" despite its legal errors. *Tadlock*, 5 F.4th at 1336. But prejudicial error analysis does not authorize the Veterans Court to make determinations—here, to determine how specific facts pertain to corresponding steps of the § 1154(b) framework—that the Board did not make, and that the Board alone is authorized (and indeed, required) to make. Permitting the Veterans Court to do so would "dissolve the *Chenery* doctrine in an acid of harmless error." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.).

This Court's decision in *Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006), further illustrates why the harmless error rule does not excuse the Veterans Court's efforts here to substitute its own judgment for the Board's. In that case, a veteran's widow challenged the Board's determination that the VA had provided her with adequate notice of the information necessary to substantiate her benefits claim, because they had sent her several notices *after* the VA's initial decision on the claim. *Id.* at 1332. The Veterans Court determined that the Board erred because such post-decision notices did not satisfy the governing notice requirement. *Id*. at 1333. But the Veterans Court held that this error was harmless: After its own review of the record, the Veterans Court located one notice that the VA had sent the veteran's widow *before* its initial decision. *Id*.

This Court reversed on *Chenery* grounds. The Court explained that "[i]f the Board in this case had considered the [pre-decision] notice and found it sufficient,

28

and if the Veterans Court had ruled that the [pre-decision] notice was insufficient, then . . . the Veterans Court would have been in a position to decide whether the insufficiency in the notice was prejudicial." 444 F.3d at 1337. But in *Mayfield* the Board had not made any determination regarding the legal sufficiency of the pre-decision notice, and it was therefore improper for the Veterans Court to "bypass[] the Board's ground of decision" and rule "on a ground different from the Board's." *Id.*

Here, just like in *Mayfield*, the Veterans Court bypassed the Board's admittedly flawed analysis to uphold the Board's determination based on "grounds different from the Board's"—namely, by making the requisite determinations at each step of the § 1154(b) framework to conclude that the presumption of in-service injury was rebutted. "If the Board in this case had considered" the evidence at steps one and two "and found it sufficient" to establish a presumption, "the Veterans Court would have been in a position to decide whether" any error in weighing countervailing evidence was harmless. *Mayfield*, 444 F.3d at 1337. But because the Board did not determine which facts applied at which steps of the governing framework at all, the Veterans Court may not do so in the Board's stead.

This case starkly illustrates the importance of abiding the foundational rule that an agency may be affirmed only on its stated grounds. Allowing the Veterans Court to excuse the Board's total failure to make factual determinations and conduct

29

the three-step presumption analysis under § 1154(b) would send a loud and clear message to the Board that it need not conduct that analysis at all, so long as it recites some facts and concludes that the veteran loses.  The Board here failed to conduct the relevant analysis in three consecutive appeals.  Condoning such egregious refusal to apply the law would effectively eliminate the statutory framework that Congress created to benefit wounded combat veterans.  The Court should take this opportunity to send the opposite message:  The Board itself must explicitly make the requisite findings, in the proper order, and make the determinations necessary to apply the statutory framework before determining whether any presumption arising from those findings and determinations is rebutted by clear and convincing evidence.[4]

## II.    The Veterans Court Misinterpreted § 1154(b)'s Mandate that the Presumption of Service Connection Applies Even in the Absence of Contemporaneous Records.

The Veterans Court also misinterpreted the requirements of § 1154(b).  In relevant part, § 1154(b) provides that "the Secretary shall accept as sufficient proof of service-connection" of an injury allegedly incurred in or aggravated by service "satisfactory lay" evidence consistent with the circumstances of service,

---

[4]  The Court should further order that, on remand, the case be assigned to a new Board member, as the current Board member has shown that he is "no longer able to view the matter objectively and to provide [the appellant] with the veteran-friendly review to which he is entitled," given his failure to conduct a proper § 1154(b) analysis after being given three chances to do so.  *McDonald v. Shinseki*, 2012 WL 1661246, at *8 (Vet. App. May 14, 2012).

"notwithstanding the fact that there is no official record of such incurrence or aggravation in such service." 38 U.S.C. § 1154(b).

The statutory prohibition against using the lack of an official contemporaneous record of injury against the combat veteran in determining service connection of an injury is a cornerstone of the § 1154(b) framework. *Collette*, 82 F.3d at 393. As explained above, this "no official record" rule reflected Congress's concern that "the absence of an official record" of injury was "a major obstacle to the veteran obtaining a service-connected rating." H.R. Rep. No. 77-1157, at 2–3 (1941); S. Rep. No. 77–902, at 2 (1941). Section 1154(b) "recognizes that combat conditions do not always permit the recording of diseases, injuries, or treatment, and such records as might exist would not necessarily be complete." *Dambach v. Gober*, 223 F.3d 1376, 1380 (Fed. Cir. 2000). In enacting § 1154(b), Congress accordingly "considerably lighten[ed] the [evidentiary] burden" that a combat veteran must meet to demonstrate that his injury was incurred in service, *Collette*, 82 F.3d at 392, by prohibiting the VA from using "the fact that there is no official record of such incurrence" against combat veterans in determining in-service injury, 38 U.S.C. § 1154(b).

But that is precisely what the Veterans Court did here. In attempting to connect the dots for the Board between the factual record and its unsupported conclusions, the Veterans Court misinterpreted § 1154(b)'s "no official record" rule

31

when it relied heavily on Mr. Miranda's "October 2006 post-deployment questionnaire, where he denied any injuries from vehicles or explosive blasts." Appx13. As noted, in a ground the Board itself did not rely upon, the Veterans Court deemed the October 2006 post-deployment questionnaire itself to be "clear and convincing evidence" that rebutted the presumption of in-service injury. Appx13–16.

But the post-deployment questionnaire at most reflects a lack of contemporaneous documentation regarding Mr. Miranda's in-service head injury or aggravation of a prior head injury. Mr. Miranda checked "NO" next to a series of questions where the form asked if he had experienced various injuries during his deployment, but he did not check either "YES" or "NO" where the form asked if he had experienced a "Fall" injury, and he then marked "NO" next to whether any such "injury" "result[ed] in" a series of cognitive symptoms. Appx3102. At most, then, the questionnaire did not affirmatively reflect the presence of a head injury incurred in Iraq.

Section 1154(b)'s "no official record" rule expressly bars this type of evidence from being used against a combat veteran in determining in-service injury. The Veterans Court, in effect, treated a document reflecting the presence of certain conditions as affirmative evidence reflecting the absence of others. But the "no official record" rule covers not only the total absence of any records, but also

32

*incomplete* records. *See Dambach*, 223 F.3d at 1380. The Veterans Court thus repeated a legal error this Court has previously condemned: It refused to give Mr. Miranda the full benefit of the presumption of service-connected injury, effectively "refusing to apply it to *any* of his illnesses because there was documentation of *some* of his illnesses." *Id.* (emphasis in original).

To construe the "no official record" rule to apply only in the total absence of any records reflecting combat-related injuries would deprive § 1154(b) of all meaning. *All* veterans are now required to complete post-deployment health assessments before they return home from a combat deployment, and such forms ask about a laundry list of injuries. *See* Emily Keram, *PTSD in Afghanistan and Iraq War Veterans*, 57 SONOMA MED. (Summer 2006), https://issuu.com/ssvmedicine/docs/0701-ssvmed. The Veterans Court's cramped construction of the "no official record" rule would force combat veterans to "speak now or forever hold their peace" on these laundry-list standardized forms, which are often completed in haste, immediately upon leaving a combat zone, before veterans can see their families after a long combat deployment.[5] *See* Appx50; *see also (Title*

---

[5] The post-deployment form that the Veterans Court relies on to rebut Mr. Miranda's presumption of in-service injury is a single-page "supplemental" injury questionnaire, Appx3102, but it was just one of many post-deployment health forms that Mr. Miranda had to fill out upon leaving Iraq, *e.g.*, Appx3039–3041; Appx3097; Appx3103–3104.

*Redacted by Agency)*, Bd. Vet. App. 1311559 (Apr. 8, 2013) (excusing a failure to report tinnitus on a post-deployment questionnaire because the veteran was "more focused on leaving Iraq and her upcoming marriage than reporting all of her current symptoms").

Such an interpretation would also be contrary to Congress's recognition in enacting § 1154(b) that combat veterans may not report injuries sustained on a combat deployment until later. *See* H.R. Rep. No. 77-1157, at 2–3; S. Rep. No. 77–902, at 2. That is particularly so with cognitive injuries like TBI, which often go unreported in military populations. *See* Richard Burr & Kay Hagan, *A Congressional Look at Postdeployment Behavioral Health Care*, NCMJ Vol. 72, No. 1 (2011), https://www.ncmedicaljournal.com/content/72/1/37 ("[T]he military's cultural norms can sometimes make service members hesitant to seek appropriate care. As a result, many service members continue to avoid reporting [TBI and PTSD] because they believe that reporting might harm their careers." (footnote omitted)); *Traumatic Brain Injuries: Unreported and Untreated in an Army Population*, Military Medicine, 185, S1:155 (2020) (finding that nearly half of soldiers who suffered a TBI did not subsequently seek medical treatment, with many soldiers stating that they did not report their TBI because they did not think it required care, or because they thought that reporting it would negatively impact their job).

Accordingly, properly understood, § 1154(b) prohibits the use of *any* lack of an official record of injury during a combat deployment—whether a total lack of documentation, or a lack of evidence reflected in incomplete documentation of injuries. *See Dambach*, 223 F.3d at 1380. That includes the type of post-deployment questionnaires that Mr. Miranda filled out upon leaving Iraq, which, here, at most did not reflect an in-service head injury. The Veterans Court therefore misconstrued § 1154(b) in holding that the lack of evidence of an in-service head injury on Mr. Miranda's post-deployment questionnaire could be used as "clear and convincing evidence" to rebut the presumption of service-connected injury.

## CONCLUSION

For the foregoing reasons, the judgment of the Veterans Court should be reversed, or alternatively, this Court should vacate and remand with instructions to re-assign the case to a new Board member.

Dated:  March 25, 2022

Respectfully submitted,

*/s/ Andrew T. Brown*
Andrew T. Brown

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7219
*Counsel for Appellant*

35

# CERTIFICATE OF SERVICE

I, Andrew T. Brown, hereby certify that that I caused the foregoing to be filed via the Court's CM/ECF system and served on counsel of record who have registered for such service on March 25, 2022.

Dated:  March 25, 2022                              Respectfully submitted,

                                                    /s/ Andrew T. Brown
                                                    Andrew T. Brown
                                                    *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) because this brief contains no more than 7,836 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point.

Dated:  March 25, 2022                    Respectfully submitted,

                                          */s/ Andrew T. Brown*
                                          Andrew T. Brown
                                          *Counsel for Appellant*

**ADDENDUM**
**(Personally Identifiable Information Redacted)**

*Designated for electronic publication only*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5973

JOHN J. MIRANDA, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before FALVEY, *Judge*.

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

FALVEY, *Judge*: Marine Corps veteran John J. Miranda appeals through counsel an August 14, 2019, Board of Veterans' Appeals decision that denied service connection for traumatic brain injury (TBI) residuals, claimed as head injury residuals, and for dizziness and loss of balance. The appeal is timely, the Court has jurisdiction to review the Board decision, and single-judge disposition is appropriate. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

We are asked to decide whether the Board violated the terms of a joint motion for remand (JMR), failed to properly evaluate lay evidence, and improperly applied 38 U.S.C. § 1154(b). We also must determine whether Mr. Miranda abandoned his argument for service connection based on aggravation of a preexisting injury and his argument that he sustained head injuries during his earlier service. For the following reasons, this Court will affirm the Board's decision.

### I. BACKGROUND

Mr. Miranda served on active duty from 1984 to 1988, in 1991, and from December 2005 to February 2007, including a 2006 deployment to Iraq. Record (R.) at 2. In 2001, while a civilian,

**Appx1**

Mr. Miranda hit his head on the overhead part of a truck door while working for UPS and lost consciousness. R. at 2396, 3061.

During his April 2005 entrance examination, he reported his "head, face, neck, and scalp" as normal. R. at 3055. But he marked "neurologic" as abnormal, *id.*, and affirmed that he had experienced dizziness or fainting spells, frequent or severe headaches, a head injury, and memory loss or amnesia, R. at 3059 (noting that he had visited an emergency room for the 2001 head injury). Also in April 2005, Mr. Miranda underwent a private psychiatric consultation and he reported continuing memory problems. R. at 3097. He underwent another psychiatric consultation a month later and he noted that he would be deploying to Iraq in January 2006, his memory was still impaired, and his "words are sluggish at times." R. at 3098.

In a February 2006 service treatment record, Mr. Miranda reported experiencing drowsiness due to his 2001 head injury. R. at 3061. He was diagnosed with post-concussion syndrome and he took medication to combat the drowsiness. R. at 3061-62.

In an August 2006 service treatment record, Mr. Miranda reported that during martial arts training he fell and landed on his elbow, which in turn injured his ribs. R. at 3063. He was placed on light duty. R. at 3065. September 2006 service treatment records noted rib contusions, but that he was improving. R. at 3070. He reported pain in his ribs, which caused trouble sleeping, and was found to have costochondritis.[1] R. at 3066, 3068, 3070, 3073, 3075.

In October 2006, Mr. Miranda completed a post-deployment health questionnaire. R. at 3077-81. He marked "no" to questions regarding symptoms of "being dazed, confused, seeing stars," "loss of consciousness," and "symptoms of concussion," and to having a head injury R. at 3077. He noted that he had injured his ribs and ankles. R. at 3078. A service treatment record from that same month recorded wrist and rib injuries while he was practicing martial arts in February and July 2006. R. at 3080.

In November 2006 service treatment records, Mr. Miranda complained of pain in his left shoulder and mentioned rib fractures. R. at 3082-83. Private clinic records noted shoulder pain and that Mr. Miranda mentioned the 2006 martial arts injury to his left side and ribs. R. at 3084-86. A December 2006 service treatment record noted that he reported he was doing martial arts when he sustained his shoulder injury. R. at 3092-93.

---

[1] "Costochondritis" is inflammation of the cartilaginous joints between the ribs and the sternum bone. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 418 (33d ed. 2020).

2

**Appx2**

In an October 2007 VA treatment record, the examiner noted Mr. Miranda's 2001 history of a concussion and that he "may have" sustained another concussion in a training exercise, which in turn "may have" contributed to other falls and mild head traumas from hitting his head on vehicle doors. R. at 2610. The treating physician noted problems with memory and attention span. *Id.* The physician noted that those could be the symptoms of concussions, but could also result from anxiety and depression. *Id.*

An October 2007 VA C&P examination noted that Mr. Miranda reported also hitting his head during the 2006 martial arts training. R. at 2937. Mr. Miranda said that he did not lose consciousness but he did "see stars." *Id.* He stated that he did not recall reporting head trauma. *Id.* He claimed to have had recurring headaches since then. *Id.* The examiner concluded that his headaches were likely related to "the initial trauma in the military in September 2006." R. at 2941.

In February 2008, a VA examiner noted that he received rib injuries in training and noted a concussion, although the examiner's report did not specify the cause. R. at 2831. The examiner noted that Mr. Miranda claimed to have survived many mortar attacks. *Id.*

In May 2008, the regional office (RO) denied service connection for head injury residuals. R. at 2792.

During a July 2009 VA TBI examination, the examiner noted Mr. Miranda's pre-service head injury and that the 2005 private health records showed that he suffered from a cognitive disorder. *Id.* The examiner stated that Mr. Miranda's service treatment records do not show a head injury or that he served in combat. *Id.* The examiner further noted that Mr. Miranda did not report a head injury in his post-deployment questionnaire. R. at 2648. The examiner stated that Mr. Miranda was treated for post-concussive syndrome in February 2006, but that he complained of post-concussive symptoms—memory and attention problems—before, during, and after service. R. at 2648. The examiner diagnosed Mr. Miranda with a mild TBI based on his past reported symptoms—headaches, memory problems, dizziness, and impaired balance. R. at 2650-52, 2658-59. But the examiner concluded that it was less than likely that the preexisting head injury with noted cognitive disorder was aggravated beyond its normal progression or permanently worsened during service. R. at 2648.

In August 2009, the RO denied service connection for TBI. R. at 2548. The RO did, however, grant service connection for headaches, but not as a result of a head injury in service, which it said had "not been verified." R. at 2549-50. Rather, the RO granted service connection

3

**Appx3**

because it found that his complaints of headaches began in service, independent of any head injury. R. at 2550. In January 2010, the RO denied service connection for dizziness and loss of balance. R. at 2463. In February 2010, Mr. Miranda filed his Notice of Disagreement (NOD). R. at 2437.

In a July 2011 VA treatment record, Mr. Miranda reported that he had frequent headaches since 2006. R. at 1715. He again recalled his martial arts training injury. *Id.* The treating physician noted, however, that Mr. Miranda did not "think that he hit his head and had no [loss of consciousness]," and that he had "no IED [(improvised explosive device)] encounters." *Id.*

In May 2013, Mr. Miranda stated that in September 2006 he was injured in martial arts training. R. at 1976. He claims he was thrown during an exercise and hit his head on concrete. *Id.* He asserted that he denied having a head injury because he did not want to be sent home. *Id.* He also asserted that after the injury he had increased headaches, hit his head on a Humvee, and had "electroshock" sensations that he did not have after his 2001 head injury. *Id.*

In September 2014, Mr. Miranda and his brother appeared at a Board hearing. R. at 1939-50. Mr. Miranda reported that, during his initial active service in 1984 to 1988, he was in explosive ordnance disposal (EOD) and that he felt disoriented by the explosive shockwaves. R. at 1941-42. His brother said that upon his return home Mr. Miranda was irritable and "unbalanced" and had trouble sleeping. R. at 1943.

In April 2015, the Board denied service connection for head injury residuals and dizziness and loss of balance. R. at 1918-30. Mr. Miranda appealed to this Court and we granted an August 2016 joint motion for partial remand (JMPR) in which the parties agreed that the Board had failed to consider 38 U.S.C. § 1154. R. at 1905-11.

In December 2016, Mr. Miranda submitted a buddy statement from James Wallace, who had served with him in Iraq. R. at 574. Mr. Wallace stated that he saw Mr. Miranda sometimes hit his head on vehicle doorframes and that on at least three occasions he quickly became uncoordinated after doing so. *Id.* He stated that he saw a change in Mr. Miranda's decision-making and thought processes, and that Mr. Miranda would take several minutes to accomplish tasks. *Id.* Mr. Wallace also stated that during a demonstration of a choke hold, Mr. Miranda became unconscious and fell face first, felt dizzy upon awakening, and had an intense headache. *Id.*

In a December 2016 brief to the Board, Mr. Miranda stated that he engaged in combat in Iraq and was exposed in March and April 2006 to blast effects from mortar attacks and IED explosions. R. at 570.

4

**Appx4**

In a January 2017 VA treatment record, the treating physician noted that Mr. Miranda did not recall specifics, but "believe[d] he did suffer head injury overseas." R. at 296.

In September 2017, the Board denied service connection for TBI residuals, claimed as head injury residuals, and for dizziness and loss of balance. R. at 207-11. Mr. Miranda again appealed to this Court and we granted a joint motion for remand (JMR). R. at 49-55. In the JMR, the parties noted that the September 2017 Board decision incorporated parts of the summary of facts from the April 2015 Board decision, but because the April 2015 decision was vacated and so "ceased to exist as a matter of law," this was an error. R. at 50. They also agreed that the Board failed to adequately discuss Mr. Wallace's buddy statement by failing to analyze his credibility and the probative value of his statement. *Id.*

In April 2019, Mr. Miranda made statements to the RO in which he explained that he did not report hitting his head in his 2006 post-deployment questionnaire because he did not realize that the head injury caused his symptoms. R. at 21, 32. He said he did not report his headaches, forgetfulness, and "electroshock" or seizure-like symptoms because he did not realize how they related to that injury. R. at 21. He said he filled the form out quickly out of a desire to quickly return home. *Id.* He only realized the connection between his head injury and his symptoms after seeking medical treatment. *Id.* He asserted that before his 2006 tour of duty he had no memory problems. *Id.*

In August 2019, the Board issued the decision now on appeal, again denying service connection for TBI residuals and dizziness and loss of balance. R. at 4-16.

## II. ANALYSIS

Mr. Miranda makes several arguments about the August 2019 Board decision and we will address each in turn.

### A. Compliance with the JMR

#### *1. Statements of Facts*

Mr. Miranda argues that the Board violated the March 2019 JMR in its August 2019 decision by using elements of the statement of facts from the April 2015 and September 2017 Board decisions, now vacated, and that this repeated the Board's error in its September 2017 decision. Appellant's Br. at 13. But this situation differs from the Board's earlier error. The September 2017 Board decision explicitly incorporated by reference the statement of facts from

5

**Appx5**

its April 2015 decision. R. at 210. The JMR noted that this was an error because the April 2015 decision to which the Board referred in its September 2017 decision was vacated and thus ceased to exist as a matter of law. R. at 50. By contrast, the August 2019 Board decision does not incorporate by reference any other document. *See generally* R. at 5-16. Moreover, Mr. Miranda's arguments go to the Board's analysis of the evidence, not to whether the Board correctly recited that evidence in its statement of facts. Appellant's Br. at 13. Thus, although we note that the statement of facts here is much like the September 2017 decision's statement of facts, we find no error to address, particularly because the veteran does not allege that the Board improperly summarized any of the facts.

### 2. Including the Appellant's Brief in the Record

Mr. Miranda argues that the Board also violated the March 2019 JMR by failing to include his brief from the second appeal, which led to the September 2017 decision. Appellant's Br. at 14. The March 2019 JMR ordered the Board to include in the record Mr. Miranda's brief to the Court about the September 2017 Board decision, R. at 52, but the record does not include this brief. The Secretary concedes this error, but he argues that this exclusion was harmless because the Board substantially complied with the remand order and the Board's decision adequately addressed the arguments Mr. Miranda made in that brief. Secretary's Br. at 11-12.

We agree with the Secretary. Although the Board must comply with a remand order from this Court, *Stegall v. West*, 11 Vet.App. 268, 271 (1998), only substantial, not strict, compliance is required, *D'Aries v. Peake*, 22 Vet.App. 97, 105 (2008); *Dyment v. West*, 13 Vet.App. 141, 146-47 (1999), *aff'd sub nom. Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002). Here, the Board substantially complied with the JMR. Among other things, the JMR required the Board to address the buddy statement and to properly apply section 1154. R. at 3-4. The Board addressed the buddy statement in its decision and found it not probative. R. at 14-15. The Board also conducted a section 1154 analysis, R. at 15-16, and, as we note below, this Court finds no prejudicial error in that part of the Board's decision. *See* 38 U.S.C. § 7261(b)(2) (holding that this Court must "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that party that seeks to set aside judgment must show prejudicial error). We find that, on the issues of the buddy statement and the application of section 1154, the Board's decision substantially complied with the JMR and so the failure to include the appellant's brief was not prejudicial.

6

**Appx6**

Mr. Miranda argues that the Board addressed none of the issues he raised in his earlier briefs. Specifically, he asserts that the Board's discussion of inconsistencies in his lay statements "had no factual basis in the record." Appellant's Br. at 13. But the Board's decision did identify those instances in the record where it found Mr. Miranda's statements to be inconsistent. R. at 13-14. Although we will discuss below whether the Board erred in its analysis, it included an analysis of that issue despite not including Mr. Miranda's earlier brief in the record. Thus, even if the omitted brief discussed Mr. Miranda's explanation about inconsistent statements, the Board's failure to discuss the brief did not leave the overall issue unaddressed, and so we do not find this error prejudicial. *See Sanders*, 556 U.S. at 409. Although Mr. Miranda also claims that there were other arguments raised in the omitted brief, Appellant's Br. at 12-14, he does not specify what those arguments were, leaving this Court unable to address whether the Board's decision failed to adequately address them despite the omission. Thus, Mr. Miranda's arguments on this point are undeveloped, and this Court need not address them. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that this Court will not address undeveloped arguments).

## B. Lay Evidence

### 1. Buddy Statement

Mr. Miranda argues that the Board erroneously considered Mr. Wallace's buddy statement to be evidence of a causal nexus between in-service injury and current disability, when in fact it was offered as evidence of an in-service injury. Appellant's Br. at 14-15. Indeed, the Board concluded that, as a lay person, Mr. Wallace's could not speak to the underlying causes of Mr. Miranda's condition. R. at 15; *see Barr v. Nicholson*, 21 Vet.App. 303, 307 (2007) ("[L]ay persons are not competent to opine as to medical etiology or render medical opinions."). As the Board found, Mr. Wallace's statement is not competent to determine whether Mr. Miranda's symptoms were due to the head injuries he witnessed or to the 2001 pre-service injury. R. at 15. Thus, the buddy statement could only serve as evidence that Mr. Miranda hit his head and showed cognitive symptoms while deployed.

As the Board noted, however, Mr. Miranda claimed that hitting his head on vehicle doors was a symptom, not a cause, of his TBI. R. at 15; *see* R. at 2610 (2007 treatment notes describing Mr. Miranda hitting his head on vehicle doors as a symptom of an earlier concussion). So the question before the Board was whether those TBI symptoms were service related. R. at 5. Mr. Wallace's statement does not answer that question; it only presents facts that the Board already

7

knew. Thus, we find no clear error in the Board's determination of the buddy statement's probative weight. *See Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) (holding that this Court reviews the Board's determination of the weight and credibility of the evidence for clear error).

As to whether Mr. Wallace's statement supports Mr. Miranda's claim that he was injured in training, the Board found the buddy statement less probative than Mr. Miranda's service treatment records. Not only do those records not show a head injury, but in his post-deployment questionnaire Mr. Miranda denied having a head injury or losing consciousness. R. at 3077. The Board found the contemporaneous medical records, including Mr. Miranda's own statements, more probative than a buddy statement made years later. We find no clear error in the Board's weighing of that evidence. *See Wood*, 1 Vet.App. at 193.

*2. Credibility of the Veteran's Statements*

Mr. Miranda argues that the Board made an impermissible medical judgment when it concluded that his lay evidence was not credible because his accounts of his injury were inconsistent with what would be expected of someone with a head injury. Appellant's Br. at 25-26. He also argues that the Board lacked a foundation for saying that his injuries were of a kind that the Board expected he would have noted in his post-deployment questionnaire. *Id.* at 26-27.

But the Board did not conclude that Mr. Miranda's statements were inconsistent with medical expectations; it found the statements conflicted with each other. R. at 13. The Board noted, R. at 13-14, that Mr. Miranda variously said that he hit his head on concrete, R. at 5654, on a mat,[2] and that he could not remember hitting his head at all, R. at 1715. The Board also noted that Mr. Miranda claimed he did not report his TBI symptoms while in service because he did not want to be sent home early from deployment, *see* R. at 564, but then he also denied such symptoms in his post-deployment questionnaire, *see* R. at 21, 32. The Board concluded that these inconsistencies undermined Mr. Miranda's credibility. R. at 14.

Thus, the Board was not determining whether Mr. Miranda's statements were consistent with its medical expectations. Instead, the Board was determining the credibility of his statements and, in doing so, it is proper for the Board to consider any inconsistencies in those statements. *See Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006). Mr. Miranda mischaracterizes the Board's decision and so his argument fails.

---

[2] The Board's decision referenced a March 2009 letter where Mr. Miranda said he hit his head on a mat during the 2006 martial arts accident. R. at 11. However, this letter does not appear in the record.

8

**Appx8**

### 3. Considering Evidence of Post-Deployment Change in Symptoms

Mr. Miranda argues that Board failed to consider the change in his symptoms from his enlistment to post-deployment. Appellant's Br. at 27-28. He notes that at enlistment in April 2005 he was found "qualified for service" by the evaluating physician, but that after service he suffered lack of balance, dizziness, headaches, and "electroshock" sensations. *Id.* at 27. He faults the Board for relying on the July 2009 VA examination, arguing that the examiner did not discuss the changes in Mr. Miranda's symptoms. *Id.*

Mr. Miranda mischaracterizes the evidence. In his April 2005 entrance examination, although the examiner noted that Mr. Miranda was a "healthy adult with no current limitations," R. at 3060, the examiner also noted that Mr. Miranda stated that he was "abnormal" for neurologic issues, R. at 3055, and reported experiencing dizziness, headaches, and a head injury, R. at 3059. He reported similar symptoms in the October 2007 VA examination, R. at 2937 (headaches), and the July 2009 VA examination, R. at 2650 (headaches, dizziness, and impaired balance). Mr. Miranda's own descriptions show the same kinds of symptoms after his 2001 pre-service injury and after his 2006 deployment.

The only symptom which he did not describe before his deployment are the "electroshock" sensations; indeed, the Board acknowledges his assertion that the "electroshock" symptom did not follow his 2001 pre-service injury. R. at 12. In his brief challenging the 2015 Board decision, R. at 1879, 1882, he cited his May 2013 statement about "electroshock" sensations, R. at 564. He cites no other evidence for this symptom. Although the Board must consider lay evidence of symptoms, *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007), it is still free to find that the proffered lay evidence lacks credibility, *Layno v. Brown*, 6 Vet.App. 465, 469 (1994). The Board implicitly found Mr. Miranda's claims of "electroshock" sensations not credible when it found his post-service statements not credible. R. at 13-14.

Mr. Miranda claimed that he had a head injury during his 2006 deployment, but the evidence for this only appears after his deployment, in the context of seeking benefits from VA. *See* R. at 2937-42 (October 2007 VA examination); 2831 (February 2008 VA examination). This claim is contradicted by his silence about any head injury in his 2006 treatment records, R. at 3063-64, 3066-70, 3073-75, 3080-81, and his denial of a head injury in his post-deployment questionnaire, R. at 3077-81. The Board found this discrepancy weighed against a finding of any head injury in service. R. at 13-14. The May 2013 statement attributes the "electroshock" symptom

9

to a 2006 in-service head injury, but the Board found that such an injury did not happen, and that Mr. Miranda's account is not credible. As noted above, we find no clear error in the Board's determination of Mr. Miranda's credibility.

### C. Application of 38 U.S.C. § 1154(b)

Mr. Miranda also argues that the Board failed to properly apply 38 U.S.C. § 1154(b), specifically that it failed to conduct the three-step analysis required by the statute. Appellant's Br. at 16-17. Although we agree with Mr. Miranda, we find that he has not shown that the Board's error was prejudicial.

*1. The Board's Analysis Under Section 1154(b)*

Under section 1154(b), if a veteran engaged in combat with the enemy, the standard for establishing that an in-service injury occurred is less burdensome than normal. Consideration of the combat presumption amounts to a three-step analysis: (1) whether the veteran gave satisfactory evidence of a combat injury; (2) whether that injury is consistent with the circumstances, conditions, or hardships of such service; and (3) whether there is clear and convincing evidence to rebut the veteran's claim. 38 U.S.C. § 1154(b); *Collette v. Brown*, 82 F.3d 389, 392-93 (Fed. Cir. 1996). Once the first two prongs are met, there is a presumption that a combat-related injury occurred unless rebutted by clear and convincing evidence in the third prong. *Collette*, 82 F.3d at 393. The Secretary must accept a veteran's satisfactory lay or other evidence as sufficient proof of an in-service injury even if there are no official records of the injury. 38 U.S.C. § 1154(b); *see also Sheets v. Derwinski*, 2 Vet.App. 512, 515 (1992). The statute requires the Secretary to determine the credibility of the veteran's evidence standing alone, and only on the third step—rebutting the presumption—can the Secretary weigh the veteran's evidence against contrary evidence. *Collette*, 82 F.3d at 394.

Mr. Miranda stated that he engaged in combat while deployed to Iraq in 2006, R. at 574, and asserted that he suffered head injuries due to mortar and IED blasts, R. at 1949; Appellant's Br. at 3. Because he has claimed a combat-related injury, section 1154(b) applies to his case. As required, the Board conducted an analysis under that statutory provision. R. at 15-16.

However, the Board failed to conduct a *proper* analysis under section 1154(b). The Board did not consider Mr. Miranda's proffered evidence standing alone. *See Collette*, 82 F.3d at 394. Rather, the Board combined the first and third prongs of section 1154(b), determining that Mr. Miranda's lay evidence was sufficient to establish an in-service injury and then in the same

10

**Appx10**

sentence determining that clear and convincing evidence existed to rebut Mr. Miranda's lay statements. R. at 15. The Board also said that it was "not clear" if Mr. Miranda's alleged injury was consistent with the circumstances of his service, but with no further analysis. *Id.* The Board's conflation of the first and third prongs and its failure to conduct a meaningful analysis under the second prong does not satisfy the three-part analysis prescribed by section 1154(b). *See Collette*, 82 F.3d at 392-94.

Even so, this Court reviews the Board's determinations for prejudicial error. 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409. As we will discuss, because we find that the Board's conclusion—that clear and convincing evidence rebuts the presumption of Mr. Miranda's in-service injury—was not clearly erroneous, *see Collette*, 82 F.3d at 392, we find the Board's failure to discuss the three-part analysis under section 1154(b) to be harmless.

*2. Clear and Convincing Evidence Against an In-Service Injury*

The presumption that a veteran has suffered an in-service injury during combat with the enemy may be rebutted by clear and convincing evidence to the contrary. 38 U.S.C. § 1154(b). As with all the Board's determinations of fact, we review its determination of clear and convincing evidence for clear error. *See* 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). We do not find clear error in the Board's determination that the record includes clear and convincing evidence contradicting Mr. Miranda's assertion of an in-service injury.

We note that Mr. Miranda argues that the Board, when it determined that clear and convincing evidence weighed against an in-service injury, failed to give an adequate statement of reasons or bases for its determination that his statements about the onset of his TBI were inconsistent. Appellant's Br. at 24. The Board must give a statement of reasons or bases for its decision clear enough to facilitate judicial review. *Gilbert*, 1 Vet.App. at 56-57. Here, the Board found that Mr. Miranda's inconsistent statements about the onset of his TBI weighed against his credibility and that this finding constituted clear and convincing evidence against a combat-related injury. R. at 15-16. The Board explicitly referenced its earlier analysis of the credibility of Mr. Miranda's statement, where the Board found inconsistencies. R. at 15. As that analysis was only a few pages before in the Board's decision, *see* R. at 13-14, and will be discussed below, review by this Court is not frustrated, and we do not find that the Board's statement of reasons or bases was inadequate. *See Gilbert*, 1 Vet.App. at 56-57.

11

**Appx11**

Mr. Miranda further argues that VA has already acknowledged that he suffered a head injury in service. He asserts that in August 2009, the RO granted service connection for headaches and that the Board conceded at the September 2014 hearing that this showed that there was a head injury of some sort. Appellant's Br. at 5-6, 23. At the September 2014 Board hearing, the veterans law judge (VLJ) said, "[The] August 2009 service connection—I mean they acknowledge that you had a head injury in-service and that's why you have the headaches[.]" R. at 1949. But the VLJ mischaracterized the August 2009 RO rating decision. That decision stated that, although the veteran claimed his headaches were secondary to an in-service head injury, no in-service head injury had been verified. R. at 2549-50. Service connection for headaches was granted because he only complained of them after his 2006 service, and because an October 2007 VA examination concluded that the headaches were likely service related. R. at 2550. The same August 2009 RO decision denied service connection for residuals of a head injury or TBI, R. at 2552-53, the condition at issue in this appeal. In its decision on appeal, the Board noted that the August 2009 RO decision, while granting service connection for headaches, did not say that Mr. Miranda suffered a head injury in service. R. at 13. Thus, we find no merit in the veteran's argument that VA had acknowledged an in-service head injury.

Ultimately, the Board found that the evidence weighs against a finding that Mr. Miranda suffered any head injury in service, much less a combat injury contemplated by section 1154(b). R. at 13. A review of Mr. Miranda's records from before and during service do not show this conclusion to be clearly erroneous. The Board notes that he entered service in December 2005 still suffering the effects of the 2001 head injury he sustained while working for UPS. *Id.* Private health records show that he was suffering from cognitive problems in April and May 2005, before he reentered service and before his 2006 deployment to Iraq. R. at 3097-98. On his April 2005 entrance examination, he marked himself "abnormal" for neurologic issues, R. at 3055, and noted that he had experienced dizziness, headaches, and a head injury. R. at 3059. February 2006 service treatment records show treatment for drowsiness and post-concussion syndrome traceable to his 2001 head injury. R. at 3060. That was before the March and April 2006 IED and mortar blasts Mr. Miranda cited as his combat injuries. R. at 570. Service treatment records from August and October 2006 show that he sought treatment for rib injuries, not head injuries, caused by the 2006 martial arts training incident. R. at 3063-64, 3066-70, 3073-75, 3080-81. None of these records reference a head injury other than the one he sustained in 2001.

12

Taken by itself, the lack of an injury in the records would not rebut a presumption of a combat injury under section 1154(b). *See Sheets*, 2 Vet.App. at 515. But this evidence in the record must also be viewed alongside Mr. Miranda's own statements in his October 2006 post-deployment questionnaire, where he denied any injuries from vehicles or explosive blasts. R. at 3077. He denied having a head injury or any injury that caused him to feel dazed or confused or to "see stars," to lose memory of the injury, to lose consciousness, or to experience symptoms of a concussion. *Id.* The Board found that the veteran's October 2006 statements constituted clear and convincing evidence against a combat injury, R. at 13, 15, and we find no clear error in the Board's conclusion. *See Gilbert*, 1 Vet.App. at 52.

Mr. Miranda argues that, contrary to the Board's determination, he has consistently stated that he suffered an in-service head injury. Appellant's Br. at 23. He argues that he said that his balance was good before going to Iraq in 2006, *id*., apparently[3] referencing his May 2013 statement, R. at 564. He then cites his October 2007 VA TBI examination, May 2008 "evaluation" and "diagnosis,"[4] October 2007 VA examination and treatment notes, and his July 2009 VA examination. Appellant's Br. at 23.

We find this argument unpersuasive because the Board addressed that evidence and we do not find prejudicial error in its analysis. As for the May 2013 statement, the Board acknowledged it in its recitation of the facts, R. at 12, but generally found that Mr. Miranda's statements about the alleged 2006 in-service injury were not credible, R. at 13-14.

In its analysis, the Board seems to have conflated the October 2007 and February 2008 examinations. The Board decision references the "statements by VA treating physicians and the February 2007 VA examiner," R. at 14, but there is no VA examination from February 2007 in the record. Rather, there are VA examinations from October 2007, R. at 2937-42, and February 2008, R. at 2831, and October 2007 VA treatment notes, R. at 2610. But the Board's subsequent analysis

---

[3] In his brief, Mr. Miranda consistently cites the wrong pages in the record. For example, he cites his May 2013 statement about his balance before Iraq as page 274, Appellant's Br. at 23, which contains an April 2017 treatment record listing his medications and conditions. *See* R. at 274. His May 2013 statement actually appears in the record at page 564.

[4] Again, Mr. Miranda cites the incorrect page numbers. *See* Appellant's Br. at 23. He cites the May 2008 "evaluation" of a "balance disorder" to page 167, but that is from a personality survey, R. at 155-57, 163-67, which does not discuss his balance. He cites the May 2008 "diagnosis" to pages 1195-99, but these appear to contain a VA request for psychological and neurological examiners to complete disability benefits questionnaires (DBQs). Neither a VA examination nor treatment notes from May 2008 appear in the record before us, and it is not this Court's duty to search for them. *See Breeden v. West*, 13 Vet.App. 250, 250 (2000).

13

**Appx13**

of this "February 2007" examination and the reference to contemporaneous treatment notes shows the Board meant to discuss the examinations from October 2007 and February 2008, and the 2007 treatment notes. The Board mentioned that evidence in its recitation of the facts. R. at 10; *see Johnson v. Shinseki*, 26 Vet.App. 237, 247 (2013) (holding that the Board's decision must be read as a whole), *rev'd on other grounds sub nom. Johnson v. McDonald*, 762 F.3d 1362 (Fed. Cir. 2014). The Board considered those pieces of evidence as potentially supporting Mr. Miranda's account, but then explained why it found them not probative—because they relied exclusively on his own doubtful statements. R. at 14. Thus, the Board considered the evidence from these examinations and treatment notes, even if it mislabeled them, and we can review the Board's analysis on this point, and thus the error in dating is harmless. *See Sanders*, 556 U.S. at 409.

Turning to the Board's substantive analysis of the 2007 and 2008 VA treatment notes and examination reports, we do not find any error. The Board found that evidence was not probative because it depended on Mr. Miranda's own account, which the Board considered not credible. R. at 14. The VA examiners do not seem to have looked at Mr. Miranda's other medical records and the February 2008 examiner said that the claims file was unavailable at the time of the examination. R. at 2831. The Board may not disregard a medical opinion just because it is based on a veteran's own account, but it can do so if other facts in the record contradict the veteran's account. *Kowalski v. Nicholson*, 19 Vet.App. 171, 179 (2005). Here, Mr. Miranda's reports to the VA medical personnel in 2007 and 2008 that he suffered a head injury during 2006 martial arts training are contradicted by his own post-deployment questionnaire that he did not experience a head injury or related symptoms. *See* R. at 3077. His August through October 2006 service treatment records do not show any evidence of a head injury. R. at 3063-64, 3066-70, 3073-75, 3080-81. The 2007 VA treatment notes found that his neurologic symptoms "may have" been due to a head injury in service and even suggested that his symptoms were due to anxiety and depression, not a head injury. R. at 2610. On this basis, we cannot say that the Board's determination that the 2007 and 2008 VA treatment notes and examinations were not probative was clearly erroneous. *See Gilbert*, 1 Vet.App. at 52.

In contrast, the Board gave great probative weight to the July 2009 examination. R. at 13, 15. Mr. Miranda argues that the July 2009 examination is not probative because it relied solely on the lack of evidence in his service treatment records. Appellant's Br. at 21, 27. The July 2009 examiner reviewed Mr. Miranda's service treatment records and noted that they do not show a head

14

injury. R. at 2646. But the examiner was also aware of Mr. Miranda's 2005 private medical records, which showed that he had a cognitive disorder before his later period of service and deployment. *Id.* The examiner noted that Mr. Miranda complained of memory and attention problems before, during, and after his deployment. R. at 2648. The examiner concluded that it was less likely than not that the veteran's preexisting head injury was aggravated in service because the evidence did not show that Mr. Miranda sustained a head injury in training or in combat. *Id.* The Board found the July 2009 examination report highly probative because it recognized the continuity of symptoms pre-service and post-service, R. at 15, and yet it found that Mr. Miranda's condition was more likely due to the 2001 pre-service injury rather than an in-service injury, R. at 13. The Board's reasoning has a plausible basis in the July 2009 examination report itself and Mr. Miranda's contemporaneous treatment records, and so we find no clear error in the Board's conclusions. *See Gilbert*, 1 Vet.App. at 53

The Board found that Mr. Miranda's later statements that he sustained a head injury during the 2006 martial arts training were not credible and that there was clear and convincing evidence to rebut that there was an in-service injury. R. at 15-16. The Court finds that the Board's only error in its analysis—that it did not discuss the three-step analysis under section 1154—was harmless, and no clear error in the Board's determination that clear and convincing evidence weighed against a finding that Mr. Miranda suffered an in-service head injury, combat related or otherwise.

### D. Aggravation in Service

The Secretary argues that Mr. Miranda abandoned his arguments regarding service connection on a theory of aggravation in service. Secretary's Br. at 7. Mr. Miranda counters that he did not and that the issue appeared in his opening brief. Reply Br. at 1. Indeed, Mr. Miranda argued in his opening brief that the Board improperly dismissed service connection based on aggravation without discussing his change in symptoms, from being fit for duty in 2005 to experiencing headaches, cognitive problems, and "electroshock" sensations after service. Appellant's Br. at 10. He notes that the Board found highly probative the July 2009 VA examination that concluded that it was less likely than not that the preexisting head injury was aggravated beyond normal progression or permanently worsened during service. *Id.* at 18. Thus, the Secretary is incorrect, and Mr. Miranda did raise an argument about aggravation in service.

However, the Board discussed service connection under a theory of aggravation in service and still denied service connection. R. at 15. The Board relied on the July 2009 examination, R. at

15

15, the only discussion of service connection based on aggravation, R. at 2646-60. The July 2009 examiner concluded that it was less likely than not that the preexisting injury was aggravated beyond normal progression or became permanently worse during service. R. at 2648. The Board found that opinion highly probative because it noted that Mr. Miranda's service treatment records did not show aggravation, but that his symptoms before and after his 2005 to 2007 service were similar in nature and severity. R. at 15. We find no clear error in the Board's analysis. *See Gilbert*, 1 Vet.App. at 52.

### E. Claims About Mr. Miranda's 1984-1988 Service

In the decision on appeal, the Board determined that Mr. Miranda's and his brother's September 2014 hearing testimony was not credible "to the extent that they suggest that the source of [Mr. Miranda's] TBI was his original period of service [1984-88]." R. at 10. The Secretary argues that Mr. Miranda's opening brief did not challenge this determination and so that issue is abandoned. Secretary's Br. at 7. Mr. Miranda disputes the Secretary's contention. Reply Br. at 1.

Even if not abandoned, Mr. Miranda's argument is underdeveloped. *See Locklear*, 20 Vet.App. at 416 (holding that this Court will not address undeveloped arguments). He mentions this determination only once in his opening brief, merely summarizing the Board's reasoning, noting that the Board "relie[d] on Mr. Miranda's treatment records in assessing the credibility of Mr. Miranda [and] his brother." Appellant's Br. at 18. But Mr. Miranda does not explain in either brief why or how the Board erred in determining that his service treatment records were more probative than his and his brother's testimony regarding his 1984-1988 service. At any rate, Mr. Miranda's service treatment records from that period do not show any head injuries. *See* R. at 600-58, 727-59, 776, 787. It was on that basis that the Board found the statements that Mr. Miranda and his brother made in the 2014 hearing regarding his 1980-1988 service not credible. R. at 10. Because there is a plausible basis for that determination, we find no clear error in the Board's findings. *See Gilbert*, 1 Vet.App. at 53.

### III. CONCLUSION

On consideration of the above, the August 14, 2019, Board decision is AFFIRMED.

DATED: February 18, 2021

16

**Appx16**

Copies to:

Sean S. Twomey, Esq.

VA General Counsel (027)

17

**Appx17**

*Not published*
*NON-PRECEDENTIAL*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5973

JOHN J. MIRANDA,                                                    APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,                                      APPELLEE.

Before BARTLEY, *Chief Judge*, and TOTH and FALVEY, *Judges*.

## O R D E R

*Note:   Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

In a February 18, 2021, memorandum decision, the Court affirmed an August 14, 2019, decision of the Board of Veterans' Appeals that denied the appellant entitlement to service connection for traumatic brain injury residuals, claimed as head injury residuals, and for dizziness and loss of balance. On March 11, 2021, the appellant filed a motion for an extension of time to file a motion for reconsideration or a panel decision, and the Court subsequently granted the appellant's motion for an extension of time. On April 26, 2021, the appellant filed a timely motion for reconsideration or, in the alternative, a panel decision. The motion for decision by a panel will be granted.

Based on review of the pleadings and the record of proceedings, it is the decision of the panel that the appellant fails to demonstrate that 1) the single-judge memorandum decision overlooked or misunderstood a fact or point of law prejudicial to the outcome of the appeal, 2) there is any conflict with precedential decisions of the Court, or 3) the appeal otherwise raises an issue warranting a precedential decision. U.S. VET. APP. R. 35(e); *see also Frankel v. Derwinski*, 1 Vet. App. 23, 25-26 (1990).

Absent further motion by the parties or order by the Court, judgment will enter on the underlying single-judge decision in accordance with Rules 35 and 36 of the Court's Rules of Practice and Procedure.

Upon consideration of the foregoing, it is

ORDERED, by the single judge, that the motion for reconsideration is denied. It is further

ORDERED, by the panel, that the motion for panel decision is granted. It is further

ORDERED, by the panel, that the single-judge decision remains the decision of the Court.

DATED: May 28, 2021                                                        PER CURIAM.

Copies to:

Sean S. Twomey, Esq.

VA General Counsel (027)

2

**Appx19**

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No: 19-5973

John J. Miranda, Appellant,

v.

Denis McDonough,
Secretary of Veterans Affairs, Appellee.

**JUDGMENT**

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: June 22, 2021                                   FOR THE COURT:

                                                                  GREGORY O. BLOCK
                                                                  Clerk of the Court

                                                                  By: /s/ Abie M. Ngala
                                                                  Deputy Clerk

Copies to:

Sean S. Twomey, Esq.

VA General Counsel (027)

**Appx20**



# BOARD OF VETERANS' APPEALS

**FOR THE SECRETARY OF VETERANS AFFAIRS**

IN THE APPEAL OF
    **JOHN J. MIRANDA**
    (A.K.A. JUAN MIRANDA)
    (A.K.A. JUAN RAMOS)
Represented by
    Sean S. Twomey, Attorney

Docket No. 13-15 196

DATE: August 14, 2019

## ORDER

Service connection for residuals of a traumatic brain injury (TBI), claimed as residuals of a head injury, is denied.

Service connection for dizziness and loss of balance is denied.

## FINDINGS OF FACT

1.  Residuals of a head injury were neither incurred in nor related to service.

2.  Dizziness and loss of balance were neither incurred in nor related to service.

## CONCLUSIONS OF LAW

1.  The criteria for service connection for residuals of a TBI, claimed as residuals of a head injury, have not been met.  38 U.S.C. §§ 1101, 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306(b) (2018).

2.  The criteria for service connection for dizziness and loss of balance have not been met.  38 U.S.C. §§ 1101, 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306(b) (2018).

IN THE APPEAL OF
**JOHN J. MIRANDA**
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)



Docket No. 13-15 196

## REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1984 to September 1988, in February 1991, and from December 2005 to February 2007.

This appeal is before the Board of Veterans' Appeals (Board) from August 2009 and January 2010 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois.

In September 2014, the Veteran testified during a Board hearing in Chicago, Illinois before the undersigned Veterans Law Judge. A transcript is included in the claims file.

In April 2015, the Board denied the Veteran's claims currently on appeal and dismissed a third claim as withdrawn. He appealed the denials to the United States Court of Appeals for Veterans Claims (Court), which vacated the denials in an August 2016 order granting a joint motion for partial remand (JMPR). The Board again denied the claims in a September 2017 decision. The Veteran again appealed to the Court, which vacated the second denial in a March 2019 order granting a joint motion for remand (JMR). The issues are therefore again before the Board.

**1. Entitlement to service connection for residuals of a TBI, claimed as residuals of a head injury**

**2. Entitlement to service connection for dizziness and loss of balance**

The Veteran claims service connection for residuals of a TBI and for dizziness and loss of balance. The March 2019 JMR instructs that the September 2017 decision was deficient to the extent that it improperly incorporated the April 2015 Board decision by reference and failed to adequately address the buddy statement received by VA in January 2017. The discussion is thus amended to address these concerns.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R.

2

IN THE APPEAL OF
  **JOHN J. MIRANDA**
  (A.K.A. JUAN MIRANDA)
  (A.K.A. JUAN RAMOS)



Docket No. 13-15 196

§ 3.303(a).  Service connection requires:  (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service.  *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004); *see also Caluza v. Brown*, 7 Vet. App. 498 (1995).  Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service.  38 C.F.R. § 3.303(d).

Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service.  *See* 38 U.S.C. § 1153; 38 C.F.R. §§ 3.304, 3.306(b).  A pre-existing disease or injury will be presumed to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability.  *See Davis v. Principi*, 276 F.3d 1341, 1345 (Fed. Cir. 2002); 38 C.F.R. § 3.306(a).  Furthermore, temporary or intermittent flare-ups of a pre-existing condition during service are not sufficient to be considered aggravation of the condition, unless the underlying condition, as contrasted to symptoms, worsens.  *See Jensen v. Brown*, 4 Vet. App. 304, 306-07 (1993); *Hunt v. Derwinski*, 1 Vet. App. 292 (1991).

In the case of a veteran who engaged in combat with the enemy in a period of war, lay evidence of in-service incurrence or aggravation of a disease or injury shall be accepted if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the lack of official record of such incurrence or aggravation.  The incurrence or aggravation may be rebutted by clear and convincing evidence to the contrary.  *See* 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d); *Libertine v. Brown*, 9 Vet. App. 521, 524 (1996); *Collette v. Brown*, 82 F.3d 389, 392-94 (Fed. Cir. 1996).  The standard used to determine whether a veteran engaged in combat with the enemy is reasonable doubt, which is to be resolved in a veteran's favor.  *See* VAOPGCPREC 12-99.  The provisions of 38 U.S.C. § 1154(b), however, can be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was

3

IN THE APPEAL OF
    **JOHN J. MIRANDA**
    (A.K.A. JUAN MIRANDA)
    (A.K.A. JUAN RAMOS)



Docket No. 13-15 196

incurred or aggravated in service, not to link the claimed disorder etiologically to a current disorder. *See Libertine,* 9 Vet. App. at 522-23. The provisions of 38 U.S.C. § 1154(b) do not establish service connection for a combat veteran; it aids him by relaxing the adjudicative evidentiary requirements for determining what happened in service. *Clyburn v. West,* 12 Vet. App. 296, 303 (1999).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Service treatment records from the Veteran's periods of active duty from September 1984 and September 1988 and in February 1991 do not reflect any symptoms of or treatment for a TBI.

Service treatment records from the Veteran's most recent period of active duty reflect a notation of a head injury as a pre-existing condition. At his April 2005 entrance examination, the examiner noted a past head injury with no current problems of seizures or headaches. In the accompanying report of medical history, the Veteran stated that he had a history of dizziness or fainting spells, frequent or severe headaches, and a head injury, memory loss, or amnesia.

Service treatment records also include an April 2005 private medical record of psychiatric consultation. The Veteran reported hopelessness, helplessness, irritability, and anger outbursts. It was noted that the Veteran continued to have problems with his memory and was very upset that he was unable to return to work due to his memory problems. In a May 2005 follow-up appointment, the Veteran explained that he was training to be deployed in Iraq. His memory continued to be impaired, and it was noted that he was very forgetful. He stated that his words were sluggish at times.

4

IN THE APPEAL OF
   **JOHN J. MIRANDA**
   (A.K.A. JUAN MIRANDA)
   (A.K.A. JUAN RAMOS)



Docket No. 13-15 196

A February 2006 service treatment record indicates that the Veteran was treated for difficulty concentrating and drowsiness that he attributed to a 2001 injury he suffered while working for UPS. He was diagnosed with post-concussion syndrome.

Service treatment records further indicate that the Veteran suffered a fall during a martial arts training exercise in August 2006. He reported falling on his left side on his left arm, and his left elbow hit his ribs. The Veteran was assigned to light duty. The Veteran was treated twice in August 2006 and four times in September 2006. He saw an orthopedist twice in October 2006. He was seen three times in November 2006, by which time his diagnosis was two fractured ribs. He was seen once in December 2006 and once in January 2007. Each of these appointments has detailed records, and in none of them was it noted that the Veteran hit his head or had any TBI symptoms. (The Board notes that throughout the post-service record, both the Veteran and multiple physicians refer to this incident happening in September 2006. Because service records are clear that it actually happened in August, for the rest of this decision the Board will paraphrase their statements to refer to an August 2006 incident.)

In October 2006, the Veteran filled out a Post Deployment Health Assessment Supplemental Injury Questionnaire. At this point, the Veteran specifically stated that his injury did not result in a head injury, symptoms of a concussion, any loss of consciousness, not remembering the injury, or being dazed, confused, or seeing stars. The Veteran also stated that his injury resulted in sleep problems, but not headaches, dizziness, memory problems, balance problems, ringing in ears, or irritability.

The Veteran underwent a general medical VA examination in February 2007. At the time, the Veteran reported that he suffered headaches which began in service as a result of head injuries he sustained in June and August of 2006, during martial arts exercises. The examiner diagnosed muscle contraction headaches and opined that they were more likely than not related to the August 2006 trauma.

An August 2007 letter from a VA social worker notes that the Veteran is being treated by a VA TBI team, due to his history of a mild TBI sustained in service. He

**Appx34**

IN THE APPEAL OF
**JOHN J. MIRANDA**                                     Docket No. 13-15 196
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)

exhibited notable memory and concentration problems and receives treatment from speech pathology for cognitive issues. He was also being treated for posttraumatic stress disorder (PTSD).

VA treatment records indicate that the Veteran underwent a TBI consultation in October 2007. The Veteran reported that he had fallen during training, breaking two ribs and hitting his head. After that incident, he felt dizzy and bumped his head at least 15 times. The Veteran experienced headaches three times per week, suffered from tinnitus and difficulty hearing, had problems with forgetfulness, making decisions, and slowed thinking, and suffered from depression and anxiety. The physician found these symptoms consistent with TBI. Records indicate the Veteran had a follow-up appointment in November 2007, focusing on his headaches.

A February 2008 VA treatment note made reference to a 2001 head injury, and that the Veteran has had significant somnolence problems since then. The Veteran reported that he had suffered no TBI while in Iraq.

In May 2008, the Veteran underwent a VA neuropsychological consultation. The Veteran reported that he was remotely exposed to mortar attacks, explosions, etc., but never lost consciousness or became confused and disoriented as a result. The Veteran reported that in 2001 while working as a UPS driver, he was hit in the head by a truck door, resulting in some alteration of consciousness. He experienced headaches and dizziness which lasted one year. He also experienced cognitive difficulties, but had difficulty explaining their nature to the neuropsychologist. He reported that he was treated for these difficulties and his cognition improved. The Veteran further reported that he was injured in 2006 during a martial arts exercise. He broke two ribs and felt dizzy and slightly confused. He reported that the fall caused subsequent dizziness, headaches, and clumsiness. This clumsiness resulted in him hitting his head on his Humvee on several other occasions. He reported current symptoms of difficulties with attention, concentration, memory, slowed thinking, and decision making. He further reported daily headaches. He had experienced balance difficulties in the past, but these difficulties had improved. He further reported sleep problems and mental health difficulties. The neuropsychologist concluded that the Veteran's history is complicated, and that it

6

IN THE APPEAL OF
    **JOHN J. MIRANDA**
    (A.K.A. JUAN MIRANDA)
    (A.K.A. JUAN RAMOS)



Docket No. 13-15 196

was possible that he sustained one or more very mild concussions since his 2001 injury.

A May 2008 VA physical therapy note stated that the Veteran was tested for balance disorder. Abnormal range results were found for sensory organization tests, adaptation tests, and limits of stability tests.

VA treatment records indicate that the Veteran was next seen in October 2008, when he reported the August 2006 incident in Iraq. The Veteran stated that he thought he hit his head and was unsure if he lost consciousness. He broke two ribs and developed headaches. One month later, he started to feel electric shocks in his hands, dizziness, lightheadedness, near syncope, and disequilibrium. His most recent head injury was in September 2008, after which he developed worse headaches, and he now feels numbness in the face and lighter numbness in the right hand.

In a March 2009 letter, a VA patient advocate stated that the Veteran suffers from a TBI which causes memory problems. A second March 2009 letter from his VA treating physician described the Veteran's TBI, stating that in August 2006 the Veteran flipped and landed on his left elbow and ribs sustaining two fractured ribs. He hit his head on the mat and felt dazed for a few minutes and did not have any loss of consciousness. After the head injury, he started having headaches and decreased balance, which in turn caused multiple falls while in Iraq.

VA treatment records show that in April 2009, the Veteran was assessed as having a history of repeated head trauma and a constellation of symptoms including headache, intermittent ataxia, lightheadedness, face and patchy numbness, fatigue, positive Lhermitte's sign, and abnormal MRI brain with multiple subcortical lesions. The physician further noted posttraumatic headaches and neuropathic pain, memory problems, depression, and anxiety.

The Veteran underwent a VA examination for residuals of a TBI in July 2009. The examiner noted the April-May 2005 records of the Veteran's previous TBI and associated cognitive disorder. The examiner opined that it is less likely than not that the Veteran's pre-existing head injury with noted cognitive disorder was

IN THE APPEAL OF
**JOHN J. MIRANDA**
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)



Docket No. 13-15 196

aggravated beyond the normal progression of the disease or became permanently worse during service. The examiner based this opinion on the rationale that there is a record of the Veteran experiencing similar symptoms prior to that period of service, and while his medical records include detailed treatment notes for fractured ribs and costochondritis, there is no record of any complaints of headache, dizziness, or any other TBI symptoms.

In his May 2013 substantive appeal, the Veteran stated that he had no loss of balance or headaches from his 2001 UPS injury when he reenlisted in 2004. It was during his martial arts training in August 2006 that he hit his head. When asked if his head hurt, he denied it, because he did not want to be sent home. His head continued to hurt, and he would hit his head on his Humvee. He also experienced electroshock sensations, which he had never experienced in relation to his 2001 UPS injury.

At his September 2014 hearing, the Veteran for the first time stated that he experienced the impact of explosions during his original period of active duty from September 1984 to September 1988. He stated that he was exposed to shockwaves from explosions on three or four occasions that disoriented him and caused ringing in his ears. The Veteran's brother stated that after the Veteran left service, he told his brother about the explosions and showed him some pictures. His brother noticed the Veteran's sleep disturbances and a lack of balance on several occasions. The Veteran also stated that his head injury resulted from his Humvee jolting around, both from the shockwaves of nearby mortar blasts and the rugged terrain from the blast holes. The Veteran did not mention the August 2006 martial arts training incident.

In a 2012 statement submitted by the Veteran's representative in January 2017, a friend who served alongside him reported that the Veteran would regularly hit his head on the doorframe of the vehicle when they served together. The friend recalled at least three occasions when the Veteran hit his head as such and quickly became uncoordinated. As time went on, the friend stated that he noticed a change in the Veteran's decision making and thought process. He also reported witnessing him lose consciousness and falling face-first during a choking demonstration in a training exercise.

8

**Appx37**

IN THE APPEAL OF
    **JOHN J. MIRANDA**
    (A.K.A. JUAN MIRANDA)
    (A.K.A. JUAN RAMOS)



Docket No. 13-15 196

In a February 2017 letter, the Veteran's treating VA neurologist opined that it was at least as likely as not that his headaches, imbalance, and cognitive complaints are causally related to the head trauma that he reported sustaining in service in 2006.

In an April 2019 statement, the Veteran reported that when he completed his October 2006 post-deployment assessment, he did not mention his head injuries because he had not yet realized that his head injuries caused his symptoms. It was not until later when he saw doctors that he believed that his in-service head injuries were the cause of his problems. He thus did not report his headaches, forgetfulness, and electroshock seizure-like symptoms until later. He also stated that he was anxious to get home and filled the form out quickly. He nevertheless stated that he experienced these symptoms towards the end of his tour of duty. He stated that his forgetfulness manifested such that he would forget to sign a log or clean his weapon. He stated that he had no such memory problems prior to his tour of duty.

As an initial matter, the Board notes that the August 2009 rating decision denying service connection for residuals of a head injury also awarded the Veteran service connection for muscle contraction headaches. This award was based on a finding that the Veteran's current headaches arose in service, and not that the Veteran suffered any trauma to the head in service.

As to direct service connection, the Board finds that the evidence weighs against a finding that the Veteran incurred a head injury in service. The Veteran's service treatment records make clear that the Veteran was suffering symptoms from his 2001 UPS injury months before his August 2006 martial arts accident. His service treatment records are extensive and detailed but make no mention of any in-service head injury. Rather, the only TBI symptoms addressed in his service treatment records are attributed by both the Veteran and his physician to the 2001 UPS injury. The Board, like the July 2009 VA examiner, finds these records probative.

In contrast, the Veteran's statements regarding in-service head injuries have been inconsistent at best, particularly with respect to whether or not he hit his head in the August 2006 martial arts accident. At the time, the Veteran denied hitting his head. The Veteran has stated that he hit his head on the concrete, that he hit his

9

IN THE APPEAL OF
**JOHN J. MIRANDA**
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)



Docket No. 13-15 196

head on the mat, and that he can't remember whether he hit his head at all.  The Veteran says that he denied TBI symptoms in service because he did not want to be sent home, yet upon finishing his deployment in October 2006 he maintained his explicit denial of TBI symptoms.  At this point, it was clear that he had suffered fractured ribs and required light duty.  In his April 2019 statement he reported that he did not mention his head injuries when his tour ended because he had not yet realized that his head injuries caused his symptoms and because he wanted to go home.  Yet in his Post Deployment Health Assessment Supplemental Injury Questionnaire he still reported other symptoms and health concerns he had been experiencing, such as sleep problems and twisted ankles.  The Board finds that these inconsistencies undermine the credibility of the Veteran's statements.

For the same reasons, the Board does not find credible the statements of the Veteran and his brother at the September 2014 hearing to the extent that they suggest that the source of the Veteran's TBI was his original period of service.  The Veteran vaguely stated that he suffered disorientation and tinnitus after feeling shockwaves of explosions, though no actual head injury was described.  The Board finds that these statements are not specific enough to support an in-service injury.  Furthermore, the record consists of voluminous medical records regarding the Veteran's TBI.  Throughout all of this treatment, the Veteran has maintained that his symptoms are the result of either the 2001 UPS injury or head injuries suffered during his most recent period of active duty.  The Board finds that the September 2014 statements to lack credibility as they are an aberration from the Veteran's account elsewhere.

Likewise, the Board finds that the statements by VA treating physicians and the February 2007 VA examiner which find a nexus between the Veteran's TBI symptoms and an in-service head injury are based on the Veteran's account of such an injury occurring.  Because the Board does not find credibility in the Veteran's statements, the Board similarly does not find probative medical opinions with no other basis but those statements.

The Board recognizes that the Veteran's friend reported witnessing him hit his head on a vehicle doorframe on at least three separate occasions, lose consciousness and falling face-first during a choking demonstration in a training exercise, and exhibit

10

IN THE APPEAL OF
**JOHN J. MIRANDA**
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)



Docket No. 13-15 196

cognitive symptoms thereafter.  The Board does not find this evidence to be probative.  The Veteran's friend is not medically competent to determine whether any symptoms he witnessed were the result of head injuries he witnessed or the Veteran's prior 2001 head injury.  As to whether the Veteran lost consciousness during the training exercise, as discussed above the contemporaneous treatment records which showed that the Veteran fell on his side and made no reference to any head injury or loss of consciousness.  These contemporaneous records are more probative than the recollections of a witness years after an event which was of no apparent consequence at the time.  As to hitting his head on the vehicle doorframe, the Veteran's friend is not medically competent to determine whether such incidents were severe enough to cause injury to the Veteran's head.  Indeed, in May 2008 the Veteran described hitting his head on doorframes not as a cause of his TBI but rather as a symptom.  The Board does not find that this evidence to weigh in favor of a finding that the Veteran experienced a head injury in service.

As to service connection by aggravation, the Board finds that the evidence weighs against a finding that the Veteran's pre-existing head injury was aggravated beyond the normal progression of the disease or became permanently worse during service.  The Board finds the July 2009 VA examiner's opinion highly probative.  The examiner noted that the Veteran's service treatment records do not reflect any in-service aggravation of his prior head injury, but rather the records show that the Veteran's symptoms prior to reenlistment are similar in nature and severity to the Veteran's symptoms after separation.  The Board agrees.

The Board further finds that the applicability of 38 U.S.C. § 1154(b) does not change the above analysis.  While lay evidence of an incident is sufficient to establish an in-service event under § 1154(b), the Board finds clear and convincing evidence that the reports are not credible.  Even if his injury could be said to be consistent with the circumstances of the Veteran's combat service, which is not clear, the statements are too contradictory to be afforded credibility.  As explained above, the Veteran has variously reported that his TBI was the result of an August 2006 martial arts training accident, explosions from his 1980s period of service, and most recently hitting his head while exiting vehicles in Iraq.  While reports of the mere occurrence of these separate incidents do not contradict each other, his

11

IN THE APPEAL OF
**JOHN J. MIRANDA**
(A.K.A. JUAN MIRANDA)
(A.K.A. JUAN RAMOS)



Docket No. 13-15 196

associated statements of the onset of his claimed TBI symptoms are not consistent. He had additionally denied ever having experienced a head injury at the time of his separation, despite his detailed reports of other injuries at that time. Furthermore, as with opinions discussed in the Board's prior denial, the February 2017 opinion of the Veteran's neurologist is based on his reports of in-service injuries. Because the Board does not credit the Veteran's reports, medical opinions based on these reports lack credibility as well. Although § 1154(b) allows lay evidence to be sufficient without corroboration, it does not mandate that the Board find all lay evidence to be credible, and such statements may be rebutted by clear and convincing evidence to the contrary, as they are in this case.

For these reasons, the Board finds that the evidence weighs against a finding that the Veteran's residuals of a head injury, including dizziness and loss of balance, were neither incurred in nor related to service, and service connection must therefore be denied.

JONATHAN B. KRAMER
Veterans Law Judge
Board of Veterans' Appeals

Attorney for the Board                                            J. Gallagher, Counsel

*The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.*

12